**SUBARU OF AMERICA, INC., Petitioner,**

v.

**DAVID McDAVID NISSAN, INC. d/b/a David McDavid Subaru, Respondent.**

No. 00–0292.

Supreme Court of Texas.

Argued Feb. 14, 2001.

Decided June 27, 2002.

Rehearing Denied Aug. 29, 2002.

Bruce C. Morris, Wm. Bruce Stanfill, Jeffrey T. Nobles, Diane M. Guariglia, Beirne Maynard & Parsons, Houston, for Petitioner.

Stephen A. Khoury, Robert L. Kelsoe, Kelsoe Anderson & Khoury, Dallas, for Respondent.

Justice BAKER delivered the opinion of the Court.

On December 6, 2001, we granted Subaru's motion for rehearing. We withdraw our opinion and judgment dated May 31, 2001, and substitute the following in its place.

This case involves the interrelation between a trial court's original jurisdiction and the Texas Motor Vehicle Board's original jurisdiction under the Texas Motor Vehicle Commission Code.[1] The court of appeals held that the Legislature's granting exclusive jurisdiction to the Board abrogates a party's common-law claims, and therefore, the Code unconstitutionally denies a citizen's access to the courts. 10 S.W.3d 56, 67–68. We agree that the Code confers exclusive jurisdiction on the Board to initially resolve the claims and issues the Code governs. But we do not agree that the Code abrogates any common-law claims here. Accordingly, we affirm the court of appeals' judgment in part, reverse the court of appeals' judgment in part, and remand the claims to the trial court for further proceedings.

## I. BACKGROUND

David McDavid Nissan owned two Houston car dealerships along the Gulf Freeway. Its Oldsmobile dealership was located inside Loop 610 at 6800 Gulf Freeway; eight miles farther south stood its Subaru dealership, outside Loop 610 at 11200 Gulf Freeway. In 1991, McDavid discussed its desire to switch the two dealerships' locations with Subaru's regional vice-president, John Gage. Although McDavid alleges that Gage orally consented to the relocation, McDavid did not submit a written request to relocate. Instead, relying on Gage's alleged oral assurances,

McDavid renovated the more-southern location, moved the Oldsmobile dealership there, and prepared to move the Subaru dealership inside the Loop.

On November 6, 1991, Gage sent McDavid a letter stating that Subaru had just learned that McDavid planned to relocate its Subaru dealership and that Subaru would not consent to the move. The letter stated that Subaru would not allow any Subaru franchise to move inside Loop 610. Concerned about its deteriorating relationship with Subaru, McDavid closed its Houston Subaru dealership as well as its Plano and Irving Subaru dealerships. Following the Code's procedure for voluntary-termination benefits, Subaru repurchased certain assets from the dealership and paid McDavid accordingly. The next year, Subaru allowed another dealership to relocate inside the Loop—on the lot adjoining McDavid's proposed site. McDavid then sued Subaru for refusing to allow McDavid to relocate. McDavid alleged Subaru violated the Code provision making unlawful a manufacturer's unreasonably denying a dealership-relocation application. TEX. REV.CIV. STAT. art. 4413(36), § 5.02(b)(15). McDavid also claimed Subaru violated the Texas Deceptive Trade Practices Act and breached its written dealership agreement, its oral agreement, and its duty of good faith and fair dealing.

Between January 1996 and March 1996, Subaru filed three summary-judgment motions, seeking to dismiss all McDavid's claims. Subaru asserted McDavid did not raise its claims before the Board and, consequently, could not bring these claims in court. Subaru further claimed McDavid had elected its remedy by terminating the dealership and accepting voluntary-termi-

---

1. Unless otherwise indicated, "the Board" refers to the Texas Motor Vehicle Board and "the Code" refers to the Texas Motor Vehicle

Commission Code. *See* TEX.REV.CIV. STAT. art. 4413(36).

nation benefits. Subaru also raised various other grounds for dismissing McDavid's contract, DTPA, and bad-faith claims.

Before the trial court ruled on these motions, McDavid filed a supplemental petition asserting that Subaru was "equitably estopped" from denying its oral agreement with McDavid. McDavid also responded to Subaru's summary-judgment motion. Without stating the grounds, the trial court granted a partial summary judgment, specifically excepting only McDavid's promissory-estoppel claim. Subaru filed another summary-judgment motion, claiming that the accord and satisfaction doctrine barred all McDavid's claims and again alleging that McDavid did not exhaust its administrative remedies. Subaru further asserted that promissory estoppel is not a cause of action. In response, McDavid argued that an exhaustion of remedies requirement would violate its constitutional right to a jury trial and open courts. The trial court granted Subaru's summary-judgment motion.

The court of appeals reversed the trial court's judgment in part. The court affirmed the trial court's order dismissing McDavid's DTPA claim and its "Code claim" for breach of written agreement, because these claims fall within the Board's primary jurisdiction. 10 S.W.3d at 69, 72. But the court of appeals remanded McDavid's common-law breach of oral contract claims. The court of appeals explained that remanding the oral contract claims was necessary because section 3.01(b), which states that "all aspects of the distribution and sale of motor vehicles shall be governed exclusively by the provisions of this Act," abrogated McDavid's common-law claims and, consequently, violated the Texas Constitution's open courts provision. 10 S.W.3d at 67–68. The court also concluded that, though McDavid's bad-faith claim is statutorily created, the Code did not require McDavid to first present this claim to the Board. 10 S.W.3d at 69–70.

Subaru petitioned this Court for review. We granted Subaru's petition to determine the Board's jurisdiction over McDavid's claims. At the time the trial court and court of appeals considered this issue, section 3.01 of the Code provided:

(a) The board has the general and original power and jurisdiction to regulate all aspects of the distribution, sale, and leasing of motor vehicles and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of this power and jurisdiction, including the original jurisdiction to determine questions of its own jurisdiction. In addition to the other duties placed on the board by this Act, the board shall enforce and administer the terms of Chapter 503, Transportation Code.

(b) Unless otherwise specifically provided by Texas law not in conflict with the terms of this Act, all aspects of the distribution and sale of motor vehicles shall be governed exclusively by the provisions of this Act.

TEX.REV.CIV. STAT. art. 4413(36), § 3.01 (Vernon Supp.1998), *amended by* Act of May 18, 2001, 77th Leg., R.S., ch. 155, § 5, 2001 Tex. Gen. Laws 313, 317.

In our original opinion, we concluded that section 3.01(a) conferred primary—not exclusive—jurisdiction on the Board to resolve certain Code issues raised in McDavid's claims. Further, we concluded that section 3.01(b) does not grant the Board exclusive jurisdiction because, by its plain language, that subsection only establishes that the Code governs this area of law and trumps other laws if they conflict with the Code.

However, less than two weeks before we issued our opinion, the Legislature amended section 3.01(a) to provide:

(a) The board has the *exclusive, original jurisdiction* to regulate *those aspects* of the distribution, sale, and leasing of motor vehicles *as governed by this Act* and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of this power and jurisdiction, including the original jurisdiction to determine questions of its own jurisdiction.

TEX.REV.CIV. STAT. art. 4413(36), § 3.01(a) (emphasis added). The Legislature made this amended provision "effective immediately" after receiving the necessary votes, which occurred on May 18, 2001. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 155, § 5, 2001 Tex. Gen. Laws 313, 327. The Legislature did not change section 3.01(b). We were not informed about the amendment until Subaru filed its motion for rehearing.

We granted Subaru's motion for rehearing to determine: (1) whether section 3.01's current or former version applies, and (2) whether the applicable provision grants the Board primary or exclusive jurisdiction.

## II. APPLICABLE LAW

### A. RETROACTIVE APPLICATION OF STATUTORY AMENDMENTS

■ The Texas Constitution states that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. A retroactive law literally means a law that acts on things which are past. *DeCordova v. City of Galveston*, 4 Tex. 470, 475 (Tex.1849). However, not all statutes that apply retroactively are constitutionally prohibited. A retroactive statute only violates our Con-

stitution if, when applied, it takes away or impairs vested rights acquired under existing law. *Ex parte Abell*, 613 S.W.2d 255, 260 (Tex.1981); *McCain v. Yost*, 155 Tex. 174, 284 S.W.2d 898, 900 (1955). A vested right is a property right, which the Constitution protects like any other property. *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 560 (1916). However,

[t]hat no one has a vested right in the continuance of present laws in relation to a particular subject, is a fundamental proposition; it is not open to challenge. The laws may be changed by the Legislature so long as they do not destroy or prevent an adequate enforcement of vested rights. There cannot be a vested right, or a property right, in a mere rule of law.

*Middleton*, 185 S.W. at 560.

■ Courts generally presume that the Legislature intends a statute or amendment to operate prospectively and not retroactively. *Abell*, 613 S.W.2d at 258; *Blonstein v. Blonstein*, 831 S.W.2d 468, 472 (Tex.App.-Houston [14th Dist.] 1992, writ denied). However, this general rule does not apply when the statute or amendment is procedural or remedial. *City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex.1997); *Abell*, 613 S.W.2d at 260; *Phil H. Pierce Co. v. Watkins*, 114 Tex. 153, 263 S.W. 905, 907 (1924); *Blonstein*, 831 S.W.2d at 472. This is because procedural and remedial statutes typically do not affect a vested right. *Likes*, 962 S.W.2d at 502; *Abell*, 613 S.W.2d at 260; *Exxon Corp. v. Brecheen*, 526 S.W.2d 519, 525 (Tex.1975); *Watkins*, 263 S.W. at 907; *Blonstein*, 831 S.W.2d at 472; *see also Baker Hughes, Inc. v. Keco R & D, Inc.*, 12 S.W.3d 1, 4 (Tex.1999) ("The rule is well settled that procedural statutes may apply to suits pending at the time they became effective, but even a procedural statute

cannot be given application to a suit pending at the time it becomes effective if to do so would destroy or impair rights which had become vested before the act became effective.") (citations omitted).

Similarly, the United States Supreme Court has held that a new statute conferring or ousting jurisdiction applies to existing suits because such laws typically do not affect substantive rights. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274, 114 S.Ct. 1483 (1994). Instead, jurisdictional statutes speak to the court's power rather than to the parties' rights or obligations. *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483. And a jurisdictional statute usually does not take away substantive rights " 'but simply changes the tribunal that is to hear the case.' " *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916)); *see also Southwestern Bell Tel. Co. v. City of Kountze*, 543 S.W.2d 871, 874–75 (Tex.Civ.App.-Beaumont 1976, no writ) (applying statute granting agency exclusive jurisdiction over claim pending on interlocutory appeal, and then requiring trial court to dismiss suit because the statute did not "destroy the rights of plaintiff; it simply [took] away from the trial court the jurisdiction to adjudicate the question and confer[red] the exclusive jurisdiction upon another tribunal, namely, the regulatory commission.").

### B. Jurisdiction: Trial Court and Administrative Agency

■ Our trial courts are courts of general jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000). The Texas Constitution provides that a trial court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. By statute, trial courts have "the jurisdiction provided by Article V, Section 8, of the Texas Constitution," and "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code §§ 24.007–.008. Courts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made. *Dubai Petroleum*, 12 S.W.3d at 75.

■ On the other hand, there is no presumption that administrative agencies are authorized to resolve disputes. Rather, they may exercise only those powers the law, in clear and express statutory language, confers upon them. *Key Western Life Ins. Co. v. State Bd. of Ins.*, 163 Tex. 11, 350 S.W.2d 839, 848 (1961); *Railroad Comm'n v. Rowan Oil Co.*, 152 Tex. 439, 259 S.W.2d 173, 176 (1953). Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers. *See Key Western Life Ins.*, 350 S.W.2d at 848; *Rowan Oil*, 259 S.W.2d at 176.

### C. Primary Versus Exclusive Jurisdiction

Texas courts have often confused the primary jurisdiction and exclusive jurisdiction doctrines, which are distinctly different doctrines that have different consequences when applied. *See, e.g., Lopez v. Public Util. Comm'n*, 816 S.W.2d 776, 782 (Tex.App.-Austin 1991, writ denied). Despite similar terminology, primary jurisdiction is prudential whereas exclusive jurisdiction is jurisdictional. *See Shell Pipeline Corp. v. Coastal States Trading, Inc.*, 788 S.W.2d 837, 842 (Tex.App.-Houston [1st Dist.] 1990, writ denied).

■ The judicially-created primary jurisdiction doctrine operates to allocate power between courts and agencies when *both* have authority to make initial determinations in a dispute. *Foree v. Crown Cent. Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex.1968); *see also* Travis, Comment, Primary *Jurisdiction: A General Theory and Its Application to the Securities Exchange Act,* 63 Cal. L.Rev. 926, 927 (1975). Trial courts should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations. *See Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 18 (Tex.2000); *Gregg v. Delhi–Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411, 413 (1961); *Kavanaugh v. Underwriters Life Ins. Co.,* 231 S.W.2d 753, 755 (Tex.Civ.App.-Waco 1950, writ ref'd); *see also United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 64–65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

■ If the primary jurisdiction doctrine requires a trial court to defer to an agency to make an initial determination, the court should abate the lawsuit and suspend finally adjudicating the claim until the agency has an opportunity to act on the matter. *See Central Power & Light Co. v. Public Util. Comm'n,* 17 S.W.3d 780, 787 (Tex.App.-Austin 2000, pet. denied); *Roberts Express, Inc. v. Expert Transp., Inc.,* 842 S.W.2d 766, 771 (Tex.App.-Dallas 1992, no writ).

■ Conversely, under the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the *sole* authority to make an initial determination in a dispute. *Cash Am.,* 35 S.W.3d at 15. An agency has exclusive jurisdiction "when

a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." Humphrey, Comment, *Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze,* 52 U. Chi. L.Rev. 1090, 1107 n. 73 (1985). Whether an agency has exclusive jurisdiction depends on statutory interpretation. *See Cash Am.,* 35 S.W.3d at 16; *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 447 (Tex.1996).

■ Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Cash Am.,* 35 S.W.3d at 15. Until then, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *See Texas Educ. Agency v. Cypress–Fairbanks Indep. Sch. Dist.,* 830 S.W.2d 88, 90 (Tex. 1992); *Texas State Bd. of Examiners in Optometry v. Carp,* 162 Tex. 1, 343 S.W.2d 242, 246 (1961). But because such dismissal does not implicate the claims' merits, the trial court must dismiss the claims without prejudice. *See Ritchey v. Vasquez,* 986 S.W.2d 611, 612 (Tex.1999); *Crofts v. Court of Civil Appeals,* 362 S.W.2d 101, 104 (Tex.1962). When exhaustion is required, courts have only limited review of the administrative action. *Cash Am.,* 35 S.W.3d at 15.

■ In some instances, however, the statutory scheme may necessitate that an administrative agency with exclusive jurisdiction make certain findings before a trial court may finally adjudicate a claim. Under those circumstances, if a party files its claim in the trial court before the agency resolves the issue within its exclusive jurisdiction, but the jurisdictional impediment can be removed, "then the trial court may

abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured." *American Motorists Ins. Co. v. Fodge,* 63 S.W.3d 801, 805 (Tex. 2001).

### D. STANDARD OF REVIEW

■ Determining if an agency has exclusive jurisdiction requires statutory construction and raises jurisdictional issues. Thus, whether an agency has exclusive jurisdiction is a question of law we review *de novo. See El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 312 (Tex.1999); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

■ In contrast, some Texas courts of appeals have applied an abuse of discretion standard when reviewing a trial court's decision about whether an agency has primary jurisdiction. *See State Bar v. McGee,* 972 S.W.2d 770, 773 (Tex.App.-Corpus Christi 1998, no writ); *Simmons v. Danco, Inc.,* 563 S.W.2d 376, 379 (Tex.Civ. App.-Dallas 1978, writ ref'd n.r.e.). On the other hand, at least one court of appeals has concluded that whether an agency has primary jurisdiction is a question of law. *Legend Airlines, Inc. v. City of Fort Worth,* 23 S.W.3d 83, 91 (Tex.App.-Fort Worth 2000, pet. denied). Despite this split in authorities, implicit in *Cash America* was an understanding that primary jurisdiction questions are questions of law. *See Cash Am.,* 35 S.W.3d at 19. This is logical because whether an agency has primary jurisdiction requires statutory construction. *See, e.g., Cash Am.,* 35 S.W.3d at 16–18. Thus, we conclude that a trial court's decision about whether an agency has primary jurisdiction is also a legal question we review *de novo. See El Paso Natural Gas,* 8 S.W.3d at 312; *Mayhew,* 964 S.W.2d at 928.

### III. ANALYSIS

#### A. WHETHER AMENDED SECTION 3.01 APPLIES

■ Whether an agency has primary or exclusive jurisdiction to resolve an issue determines if a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction over a dispute. *See Cash Am.,* 35 S.W.3d at 15; *see also United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 353, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). If a trial court lacks subject matter jurisdiction, it does not have the authority to resolve the claims. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). Here, the trial court's jurisdiction depends on whether amended section 3.01(a) applies and, if so, whether it grants the Board exclusive rather than primary jurisdiction. Although Subaru asks us to remand to allow Subaru to argue amended section 3.01(a)'s effects in the trial court, we exercise our authority to review the jurisdictional issue on rehearing. *See Texas Air Control Bd.,* 852 S.W.2d at 446.

■ Section 3.01(a)'s amendments became effective May 18, 2001. Because no savings clause exists, we would typically presume the Legislature intended that the amendments operate prospectively. *Abell,* 613 S.W.2d at 258; *Blonstein,* 831 S.W.2d at 472. But this presumption does not apply, because the statute is procedural and remedial in that section 3.01(a) determines what tribunal, the Board or the trial court, has the authority to initially decide a Code issue or claim. *See Likes,* 962 S.W.2d at 502; *Abell,* 613 S.W.2d at 260; *Watkins,* 263 S.W. at 907; *Blonstein,* 831 S.W.2d at 472. Section 3.01(a) also governs whether a party must exhaust administrative remedies before invoking a trial court's jurisdiction to resolve a dispute involving Code issues. *See Landgraf,* 511

U.S. at 274, 114 S.Ct. 1483; *City of Kountze,* 543 S.W.2d at 874–75.

Additionally, we do not presume that amended section 3.01(a) only applies prospectively, because amended section 3.01(a) does not alter the parties' rights or obligations, or remove any remedies already available. *See Likes,* 962 S.W.2d at 502. The Code continues to authorize the Board to take certain actions when Code violations occur. *See* TEX.REV.CIV. STAT. ART. 4413(36), §§ 6.01–.03. Likewise, other Code provisions continue to permit a party to seek actual damages in court if the Board determines Code violations occurred. *See* TEX.REV.CIV. STAT. ART. 4413(36), §§ 6.06(a), (e). Therefore, amended section 3.01(a) merely determines the tribunal that will first resolve all Code-based issues and claims. *See Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483; *City of Kountze,* 543 S.W.2d at 874–875. And the parties do not have a vested right to choose the tribunal that will make these determinations. *See Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483; *Middleton,* 185 S.W. at 560; *City of Kountze,* 543 S.W.2d at 874–75

In sum, section 3.01(a) is a procedural and remedial statute that does not affect any vested rights here. *See Baker Hughes,* 12 S.W.3d at 4. Accordingly, we conclude that amended section 3.01(a)— the version currently in effect—constitutionally applies retroactively in this case.

**B. SECTION 3.01: WHETHER IT GRANTS PRIMARY OR EXCLUSIVE JURISDICTION HAND HOW THIS AFFECTS A TRIAL COURT'S ADJUDICATING CODE-BASED CLAIMS**

**1. Primary or Exclusive Jurisdiction?**

■ Because we hold that section 3.01(a)'s current version applies here, we next decide whether that provision grants

the Board primary or exclusive jurisdiction. We conclude section 3.01(a) now vests the Board with exclusive jurisdiction over Code-related issues and claims.

Section 3.01(a)'s language clearly expresses the Legislature's intent for the Board to have exclusive jurisdiction over matters the Code governs. *See Continental Coffee,* 937 S.W.2d at 447. Specifically, this section gives the Board "exclusive, original jurisdiction" rather than "general and original power and jurisdiction" as the provision previously read. Moreover, section 3.01 no longer gives the Board unrestricted jurisdiction to regulate "all aspects of the distribution, sale, and leasing of motor vehicles. . . ." *See* Act of May 18, 2001, 77th Leg. R.S., ch. 155, § 5, 2001 Tex. Gen. Laws 313, 317 (amending TEX. REV.CIV. STAT. ART. 4413(36), § 3.01(a)). Instead, the current version has limiting language so the Board has exclusive jurisdiction to regulate "*those* aspects of the distribution, sale, and leasing of motor vehicles *as governed by this Act* . . . ." TEX. REV.CIV. STAT. ART. 4413(36), § 3.01(a) (emphasis added). This language clearly and plainly evidences the Legislature's intent that it is a jurisdictional prerequisite that the Board resolve Code-based issues and claims before a party proceeds in court. Indeed, the Legislative history shows the Legislature's intent to change section 3.01(a)'s meaning: "[The Bill] [a]mends Section 3.01(a) . . . to provide that the Board has the exclusive, *rather than general, original* jurisdiction to regulate those aspects, *rather than all aspects,* of the distribution, sale and leasing of motor vehicles. . . ." SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 1665, 77th Leg., R.S. (2001). Consequently, we conclude that amended section 3.01(a) grants the Board exclusive jurisdiction over claims and issues the Code governs.

### 2. How Does Amended Section 3.01(a) Affect a Trial Court's Adjudicating a Code-based claim?

The Code's primary purpose is to regulate motor vehicle distribution and sales for the State's economy and the citizens' welfare. *See* TEX.REV.CIV. STAT. art. 4413(36), § 1.02. To accomplish this purpose, the Code strictly regulates the number and locations of motor vehicle dealerships, establishes the requisites for manufacturer and dealer licenses, and makes certain conduct by or between franchise dealers and manufacturers unlawful. *See* TEX.REV.CIV. STAT. art. 4413(36), §§ 4.01–.07, 5.01–.05. Also, the Code authorizes the Board to (1) administer the Code's provisions, (2) establish licensee qualifications, (3) ensure that motor vehicle distribution, sale, and leasing complies with the Code and the Board's rules, (4) provide for compliance with warranties, and (5) prevent fraud, unfair practices, discriminations, impositions, and other abuses occurring with motor vehicle distribution and sale. TEX.REV. CIV. STAT. art. 4413(36), § 3.02.

Moreover, the Code establishes the administrative procedure through which the Board conducts hearings to resolve contested cases and issues under the Code. TEX.REV.CIV. STAT. art. 4413(36), § 3.08. The Code provides that any party affected by a final Board order, rule, decision, or action may obtain judicial review under the substantial evidence rule in a Travis County district court or, if removed, in the Third Court of Appeals. TEX.REV.CIV. STAT. art. 4413(36), § 7.01(a).

The Board has the authority to levy penalties payable to the Board, issue cease and desist orders, issue injunctions, or bring suit. TEX.REV.CIV. STAT. art. 4413(36), §§ 6.01–.03. However, the Board cannot award damages to remedy harm a Code violation causes. Instead, an injured party may seek monetary redress in a trial court for Code violations. Specifically, the Code expressly permits a party to bring a DTPA suit and seek damages based on another party's violating Code provisions, including those governing the dealer-manufacturer relationship. TEX.REV.CIV. STAT. art. 4413(36), § 6.06(a). Further, the Code provides that each party to a franchise agreement owes a duty of good faith and fair dealing and makes this duty actionable in tort. TEX.REV.CIV. STAT. art. 4413(36), § 6.06(e).

Accordingly, the Code creates a hybrid claims-resolution process by which parties may seek damages for certain Code violations. Initially, because the Board has exclusive jurisdiction under section 3.01(a) over claims and issues the Code governs, a party must exhaust administrative remedies to obtain a Board decision about Code violations, if any, to support a DTPA or bad-faith claim based on Code violations. *See* TEX.REV.CIV. STAT. art. 4413(36), § 6.06(a), (e). The Board's decision is subject to substantial-evidence review in a Travis County district court or, if removed, in the Third Court of Appeals. *See* TEX.REV.CIV. STAT. art. 4413(36), § 7.01(a). The Board's decision becomes "final" (and thus a party has exhausted administrative remedies) for purposes of a party's pursuing damages in a trial court for Code-based claims: (1) after the time to seek substantial-evidence review of the Board decision expires, if no affected person seeks such review, *se* TEX.REV.CIV. STAT. art. 4413(36), § 7.01(a)-(b); or (2) after an affected person who seeks judicial review exhausts the substantial-evidence review avenues, *see* TEX.REV.CIV. STAT. art. 4413(36), § 7.01(a).[2]

---

2. Unless otherwise indicated, any further reference to final Board findings means "final"

When trying a DTPA or bad-faith claim predicated on Code violations, a trial court must give "due deference to the findings of fact and conclusions of law of the [Board] contained in a final order which forms the basis of the action." TEX.REV. CIV. STAT. art. 4413(36), § 6.06(a). "Due deference" means that, once the Board's finding about an alleged Code-based DTPA or bad-faith claim is final, the trial court adjudicating the damages arising from those claims must treat the Board's findings as wholly binding. In other words, in finally resolving the Code-based DTPA and bad-faith claims, the trial court cannot retry any Board findings after they become final.

### C. MCDAVID'S CLAIMS

#### 1. DTPA CLAIM

The Code expressly permits "a person who has sustained actual damages" to bring a DTPA claim based on a franchised dealer's or manufacturer's violating certain Code provisions. TEX.REV.CIV. STAT. art. 4413(36), § 6.06(a). Here, the court of appeals "render[ed] the judgment the trial court should have rendered and dismiss[ed] McDavid's Code/DTPA claims for lack of jurisdiction." 10 S.W.3d at 69. The court of appeals explained that dismissal was required, because the *primary* jurisdiction doctrine required the Board to first decide if any Code violations support the DTPA claim. 10 S.W.3d at 69.

Subaru points out that McDavid did not specifically argue in a cross point to this Court that the court of appeals improperly rendered judgment dismissing McDavid's DTPA claim. However, we need not decide if McDavid abandoned its Code-based DTPA claim. That is because, though the court of appeals erroneously relied on the primary jurisdiction doctrine rather than

the exclusive jurisdiction doctrine for this conclusion, it correctly determined that the Board must initially decide if any Code violations exist to support the DTPA claim.

Accordingly, under the Code's hybrid claims-resolution process, McDavid must first exhaust its administrative remedies to obtain final Board findings to support the DTPA claim. Then, if the Board's final findings are favorable, McDavid may maintain the Code-based DTPA action in the trial court. TEX.REV.CIV. STAT. art. 4413(36), § 6.06(a). In trying the Code-based DTPA claim, the trial court "shall pay due deference" to the Board's final findings. TEX.REV.CIV. STAT. art. 4413(36), § 6.06(a). As previously discussed, this means the trial court may not retry the Board's findings and must treat them as entirely binding.

#### 2. Breach of Duty of Good Faith and Fair Dealing

A common-law duty of good faith and fair dealing does not exist in all contractual relationships. *See Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 418 (Tex.1995). Rather, the duty arises only when a contract creates or governs a special relationship between the parties. *See Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). We have declined to extend this common-law duty to all franchise agreements, holding that a franchisor does not exert control over its franchisee's business comparable to the control an insurer exerts over its insured's claim. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595–96 (Tex.1992). However, after *Crim Truck*, the Legislature expressly provided a statutory duty of good faith and fair dealing among parties to a car dealership

as we define this term here.

franchise agreement. TEX.REV.CIV. STAT. art. 4413(36), § 6.06(e). And, the Legislature made this duty "actionable in tort." TEX.REV.CIV. STAT. art. 4413(36), § 6.06(e).

Here, McDavid's pleadings do not clearly indicate the Code violations upon which it predicates its bad-faith claim. Rather, McDavid's pleadings only allude to Subaru's alleged "contract and statutory breaches" as supporting the bad-faith claim. Subaru moved for summary judgment on the bad-faith claim on the grounds that the Board has primary or exclusive jurisdiction and that this claim does not exist at common law. McDavid only responded that section 6.06(e) of the Code makes a bad-faith claim between parties to a car dealership franchise agreement actionable in tort.

Because McDavid's pleadings base the bad-faith claim, at least in part, on Code "breaches," the Board's exclusive jurisdiction under 3.01(a) requires McDavid to exhaust its administrative remedies to obtain Board findings about what Code violations, if any, support McDavid's bad-faith claim. Once the Board's findings about how Subaru violated the Code become final, McDavid may seek damages in the trial court based on any favorable Board findings. TEX.REV.CIV. STAT. art. 4413(36), § 6.06(e). Again, in trying the bad-faith claim, the trial court "shall pay due deference" to the Board's final findings. TEX. REV.CIV. STAT. art. 4413(36), § 6.06(a). That is, the Board's final findings cannot be retried and bind the trial court.

### 3. Breach of Oral Contract Claims

McDavid's pleadings allege that Subaru violated section 5.02(b)(15), which makes it unlawful for a manufacturer to "deny or withhold approval of a written application to relocate" except as the Code allows. But this provision applies to written, not oral, relocation requests. TEX.

REV.CIV. STAT. art. 4413(36), § 5.02(b)(15). Consequently, we agree with the court of appeals that this section does not delegate to the Board the authority to resolve a dispute between a manufacturer and a dealer about an alleged oral agreement to relocate a franchise. *See* 10 S.W.3d at 66. Likewise, because the promissory-estoppel doctrine presumes no contract exists, *Wheeler v. White,* 398 S.W.2d 93, 96–97 (Tex.1965), McDavid's claim that Subaru is now estopped from denying the existence of an oral agreement with McDavid also falls outside the Code's province.

However, the necessary facts underlying McDavid's breach of oral contract claims raise an issue that falls within the Board's exclusive jurisdiction. As we discussed above, the Code strictly regulates the number and locations of motor vehicle dealerships by requiring a license from the Board for each separate and distinct dealership location. TEX.REV.CIV. STAT. art. 4413(36), § 4.02(c). The Board may deny a license if certain statutory factors exist, or if a denial is warranted in the face of third party protests. *See* TEX.REV.CIV. STAT. art. 4413(36), § 4.06(a)-(e). Thus, McDavid's breach of oral contract claims are predicated on the assumption that the Board would have allowed the relocation and granted the license under section 4.06. And the Board's exclusive jurisdiction gives it the sole authority to initially decide if it would have granted the license to allow the relocation. Consequently, McDavid must first exhaust its administrative remedies and obtain a final Board decision about whether the Board would have granted the license to allow the relocation. Then, McDavid can pursue its breach of oral contract claims in the trial court based on that final Board decision.

### IV. OPEN COURTS CHALLENGE

McDavid argues that, regardless of whether the Board has exclusive or

primary jurisdiction, section 3.01(a) violates the Texas Constitution's open courts provision. Texas's open courts provision prohibits the Legislature from abrogating well-established, common-law causes of action unless the reason for doing so outweighs a litigant's constitutional right of redress. *See* Tex. Const. art 1, § 13; *Texas Ass'n of Bus.*, 852 S.W.2d at 448. As applied to McDavid's claims, we conclude that the Code does not violate the open courts provision.

Requiring McDavid to first exhaust its administrative remedies before it pursues its breach of oral contract claim does not violate McDavid's open courts rights. The Code sections providing that a dealer must obtain a license to operate a franchise at a certain location confer statutory rights on motor vehicle dealers that do not exist at common law. *See* Tex.Rev.Civ. Stat. art. 4413(36), §§ 4.02(c), 4.06(a)-(e). That is, the Code determines who may operate a dealership and where that dealership may be located as an exercise of "the State's police power to insure a sound system of distributing and selling motor vehicles through licensing and regulating manufacturers, distributors, converters, and dealers of those vehicles . . . ." *See* Tex.Rev.Civ. Stat. art. 4413(36), § 1.02. Because the Code—not the common law—gives McDavid the right to operate a car dealership in a certain location, requiring McDavid to exhaust its administrative remedies before the trial court finally adjudicates the breach of oral contract claims does not violate McDavid's open courts rights.

Similarly, requiring McDavid to exhaust its administrative remedies before McDavid can maintain the Code-based DTPA and bad faith claims in the trial court does not violate McDavid's open courts rights. The Code-based DTPA and bad · faith claims arise from a statute and not the common law. *See Texas Ass'n of Bus.*, 852 S.W.2d at 448.

▮ Finally, we reject the court of appeals' conclusion that section 3.01 *(b)* abrogates McDavid's common-law claims. *See* 10 S.W.3d at 67–68. Section 3.01(b)'s stating that the Code "exclusively" governs all aspects of motor vehicle sale and distribution simply requires parties selling and distributing motor vehicles to look to the Code for the rules and regulations governing these issues. As previously discussed, section 3.01(b)'s plain language shows that this subsection's purpose is to establish that the Code governs this area of law and trumps other laws if they conflict with the Code.

## V. DISPOSITION AND CONCLUSION

In amending section 3.01(a), the Legislature granted the Board exclusive jurisdiction to do all things necessary to regulate those aspects of the distribution, sale, and leasing of motor vehicles that the Code governs. This amended provision constitutionally applies retroactively here. Therefore, under the Code's hybrid claims-resolution procedure, McDavid must exhaust its administrative remedies before the trial court determines the damages arising from McDavid's Code-based claims. Until McDavid exhausts its administrative remedies to obtain final Board findings on the Code issues, the trial court lacks subject matter jurisdiction to try the alleged damages arising from McDavid's Code-based claims.

▮ Typically, when a trial court lacks subject matter jurisdiction because an agency has exclusive jurisdiction, the trial court must dismiss without prejudice such claims falling within the agency's jurisdiction. *See Cash Am.*, 35 S.W.3d at 15; *Ritchey*, 986 S.W.2d at 612; *Cypress–Fairbanks Indep. Sch. Dist.*, 830 S.W.2d at 90; *Crofts*, 362 S.W.2d at 104; *Carp*, 343

S.W.2d at 246. However, we recently reiterated that, "[i]f a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed; *but* if the impediment to jurisdiction could be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured." *American Motorists,* 63 S.W.3d at 805 (emphasis added). Here, the Code authorizes trial courts to award damages, if any, after a party exhausts administrative remedies to obtain final Board findings about any Code violations that support the Code-based claims. Thus, the impediment to the trial court's jurisdiction may be removed if McDavid exhausts its administrative remedies to obtain final Board findings about the Code issues to support its Code-based claims. Consequently, the trial court should abate McDavid's claims that require findings that fall within the Board's exclusive jurisdiction to allow McDavid a reasonable opportunity to cure the jurisdictional problem. *Fodge,* 63 S.W.3d at 805.

Accordingly, we reverse the part of the court of appeals' judgment that (1) affirms summary judgment for Subaru on the DTPA claim and (2) reverses summary judgment on the bad-faith and breach of oral contract claims and remands those claims to the trial court for further proceedings. Instead, we remand the Code-based DTPA, Code-based bad-faith, and breach of oral contract claims to the trial court with instructions that the trial court abate its proceedings until McDavid exhausts its administrative remedies to obtain final Board findings that support these claims. Further, we affirm the court of appeals' judgment remanding for trial McDavid's bad-faith claim that is not predicated on issues or claims the Code governs. We therefore affirm the court of appeals' judgment in part, reverse the court of appeals' judgment in part, and remand the claims to the trial court for further proceedings consistent with this opinion on rehearing.