ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

January 11, 2008

The Honorable Elton R. Mathis
Waller County Criminal District Attorney
846 Sixth Street, Suite 1
Hempstead, Texas 77445

Opinion No. GA-0590

Re: Consequences resulting from the downsizing of the Waller County Appraisal District (RQ-0601-GA)

Dear Mr. Mathis:

With the 2007 enactment of House Bill 1010, the Eightieth Legislature altered the legal framework for appraising property for ad valorem taxation in taxing units located in more than one county. *See* Act of May 17, 2007, 80th Leg., R.S., ch. 648, §§ 1–7, 2007 Tex. Gen. Laws 1223, 1223–25 (codified at TEX. TAX CODE ANN. §§ 6.02(a)–(b), 25.17 (Vernon Supp. 2007) and TEX. EDUC. CODE ANN. §§ 41.097(a), .210(b) (Vernon Supp. 2007)). As a result of these changes, you ask "whether the Waller County Appraisal District (WCAD) will be responsible, after January 1, 2008, for litigation filed against the district involving properties outside the boundaries of Waller County, and if not, who will be responsible."[1]

## I.    Background

To provide context for your questions, we begin with a review of the framework for appraising property in taxing units located in more than one county ("multi-county taxing units") before and after the changes adopted by the Eightieth Legislature through enactment of House Bill 1010.

### A.    Prior to House Bill 1010

The Tax Code establishes a tax appraisal district in each county and makes the district responsible for appraising all property in the district for ad valorem tax purposes. *See* TEX. TAX CODE ANN. § 6.01(a)–(b) (Vernon 2001). An appraisal district's boundaries are the same as the boundaries of the county for which the appraisal district is established—sometimes referred to as the appraisal district's "home county." *See id.* § 6.02(a). However, prior to House Bill 1010 (the "Act"),

---

[1]*See* Letter from Honorable Elton R. Mathis, Waller County Criminal District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (July 10, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

"[a] taxing unit that ha[d] boundaries extending into two or more counties [could] choose to participate in only one of the appraisal districts." *Id.* § 6.02(b); *see also id.* § 1.04(12) (Vernon Supp. 2007) (defining "taxing unit" to include entities such as school districts and cities).

When a multi-county taxing unit chose to participate in a single appraisal district, the boundaries of the appraisal district serving the taxing unit extended outside the district's home county to the extent of the taxing unit's boundaries. *See id.* § 6.02(b) (Vernon 2001). This area of extension was referred to as "overlapping" territory.[2] *See id.* § 6.025 (Overlapping Appraisal Districts; Joint Procedures) (Vernon Supp. 2007).

An appraisal district is funded by the taxing units that it serves. *See id.* § 6.062(c) (Vernon 2001) (providing that the notice of public hearing on the budget "must state that the appraisal district is supported solely by payments from the local taxing units served by the appraisal district"). Unless a different method of allocating district costs is prescribed, each taxing unit is responsible for that portion of the appraisal district's budget that is proportionate to the dollar amount of property taxes that the unit imposes in the district in the year when the budget is proposed in relation to the total dollar amount of taxes imposed in the district. *See id.* §§ 6.06(d), 6.061. Prior to the Act, where a multi-county taxing unit chose to participate in a single appraisal district, "[a]ll costs of operating [the] appraisal district in territory outside the county for which the appraisal district [was] established [were] allocated to the taxing unit for which the appraisal district appraise[d] property in that territory." *Id.* § 6.02(f); *see also* TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, APPRAISAL DISTRICT DIRECTOR'S MANUAL (Feb. 2006) at 24–25, *available at* http://www.window.state.tx.us/taxinfo/ proptax/director06/index.html (last visited Jan. 7, 2008) (explaining how an appraisal district's costs are allocated to the taxing units it serves).

An interim report submitted to the Eightieth Legislature by the House Committee on Local Government Ways and Means concluded "that overlapping appraisal districts create[d] substantial and expensive administrative problems" for districts and were "confusing to taxpayers who happen[ed] to own property in the overlapping territory." HOUSE COMM. ON LOCAL GOV'T WAYS AND MEANS, INTERIM REPORT TO THE 80TH LEGISLATURE (2007) at 89, *available* at http://www.lrl .state.tx.us/research/interim/lrlhome.cfm (last visited Jan. 7, 2008).[3] The report recommended, among other things, that appraisal district boundaries be reconfigured to follow county boundary lines. *See id.* at 90.

---

[2]The Texas Comptroller of Public Accounts reported that in 2005–06 only six appraisal districts indicated that they did not have property overlapping an adjoining appraisal district. *See* TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, APPRAISAL DISTRICT OPERATIONS REPORT: 2005 AND 2006 DATA (Feb. 2007) at 4, *available at* http://www.window .state.tx.us /taxinfo/proptax/ador0506/ (last visited Jan. 7, 2008).

[3]Some of the administrative and legal difficulties in regard to the system prior to the House Bill 1010 changes are reflected in opinions issued by this office. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0317 (2005), GA-0283 (2004); Tex. Att'y Gen. LO-98-022.

### B.    House Bill 1010

The Act amends section 6.02(a), Tax Code, to provide that "an appraisal district's boundaries [be] the same as the county's boundaries." Act of May 17, 2007, 80th Leg., R.S., ch. 648, § 1, 2007 Tex. Gen. Laws 1223, 1223 (codified at TEX. TAX CODE ANN. § 6.02(a) (Vernon Supp. 2007)). The Act makes other changes as well, including the amendment of section 6.02(b) and repeal of sections 6.02(c)–(g) and 6.025, Tax Code. *See id.* §§ 1, 5, at 1223–24. Taken together, the changes in the Act eliminate the authority of multi-county taxing units to participate in only one appraisal district. As for properties located in two or more appraisal districts, the Act requires the chief appraisers of the districts to coordinate their appraisals to the greatest extent possible. *See id.* § 2, at 1224 (codified at TEX. TAX CODE ANN. § 25.17(b) (Vernon Supp. 2007)). These boundary and operational changes take effect January 1, 2008, and "apply only to the appraisal of property for a tax year that begins on or after January 1, 2008." *Id.* §§ 6(a), 7, at 1224–25. The Act also includes certain transitional provisions, effective September 1, 2007, to assist appraisal districts in complying with the new law. *See id.* §§ 6, 7(b).

With this background regarding the framework for appraising property in multi-county taxing units before and after the Act, we analyze your question.

## II.    Analysis

You initially ask whether "Waller County Appraisal District . . . will be responsible, after January 1, 2008, for litigation filed against the district involving properties outside the boundaries of Waller County . . . ." Request Letter, *supra* note 1, at 1. We understand your reference to "litigation filed against the district" to mean a case filed by a person under chapter 42 of the Tax Code prior to January 1, 2008. *See* TEX. TAX CODE ANN. §§ 42.01–.43 (Vernon 2001 & Supp. 2007) (chapter 42).[4] You explain that WCAD is involved in "[e]xisting litigation [related to] Harris County properties [that] originated in tax years 2006, 2005, 2004, and 2003" and that "[i]t is anticipated that 2007 litigation involving properties outside of Waller County will be filed later this year." Request Letter, *supra* note 1, at 1.

In a brief submitted by WCAD to our office, the district argues that by eliminating a multi-county taxing unit's choice of participating in one appraisal district, the Act also eliminates WCAD's source to fund pending litigation related to property in that taxing unit and outside WCAD's home county. *See* WCAD Letter, *supra* note 4, at 1–3. Citing to Tax Code section 6.06(d), WCAD explains that its "budget is comprised of allocations from taxing units that are based on the total amount of taxes imposed by the taxing unit" and that "[t]his includes taxes imposed in territory outside the appraisal district's home county." *Id.* at 2. As a result of adoption of the Act, the district argues as follows:

---

[4]*Accord* Letter from James R. Evans, Jr., Hargrove & Evans, L.L.P., to Honorable Greg Abbott, Attorney General of Texas, at 1–3 (Aug. 10, 2007) [hereinafter WCAD Letter] (discussing the perceived impact of the Act on litigation filed against WCAD under chapter 42 of the Tax Code) (on file with the Opinion Committee).

> After January 1, [2008,] an appraisal district may be defending itself in a lawsuit filed by a property owner prior to the effective date [of the Act] concerning property in a county with which the appraisal district now has no connection. However, there will be no funding to conduct litigation in the adjacent county because the overlapping taxing entity will now be paying its appraisal district budget allocation to the appraisal district in the county where the unit has territory.

*Id.* WCAD asserts that the Act not only leaves it without a funding mechanism, but also without "authority to conduct litigation in another county after January 1." *Id.* at 3. WCAD's legal theory appears to be that the amendment of section 6.02(a)–(b) and repeal of section 6.02(c)–(g) abrogate WCAD's authority under those statutes to conduct pending litigation filed under chapter 42 and related to territory outside its home county. *Id.*

Having clarified the underlying concerns for your questions, we examine the Act's impact on chapter 42 litigation filed prior to January 1, 2008, by first considering whether the Act is retrospective or prospective in nature. "A statute is presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022 (Vernon 2005); *see also Subaru of Am. v. David McDavid Nissan*, 84 S.W.3d 212, 219 (Tex. 2002) (explaining courts generally presume a statute or amendment is prospective in nature, but this general rule does not apply when the statute or amendment is procedural or remedial). The plain language of the Act here indicates that its reach is prospective: "The changes in law made by this Act relating to the appraisal of property for ad valorem tax purposes apply only to the appraisal of property for a tax year that begins on or after January 1, 2008." Act of May 17, 2007, 80th Leg., R.S., ch. 648, § 6(a), 2007 Tex. Gen. Laws 1223, 1224. Moreover, nothing in the Act expressly makes its operation retrospective. *See id.* §§ 1–7, at 1223–25.

That the statute is prospective in application does not, however, answer the question of whether WCAD retains its authority to conduct chapter 42 litigation outside its home county where such litigation is filed prior to January 1, 2008. That query is answered by examining whether any provision "saves" the effect of section 6.02 as it existed before the Act. The Act itself does not contain a savings clause. *See id.* "A savings clause is a clause providing that the former law is continued in effect for certain purposes." *Firemen's Pension Comm'n v. Jones*, 939 S.W.2d 730, 733 (Tex. App.—Austin 1997, no pet.). And generally, when a statute is repealed or amended without a savings clause, the repeal or amendment abrogates any cause of action based upon the former law, and pending suits cease. *See Quick v. City of Austin*, 7 S.W.3d 109, 125, 128–29 (Tex. 1998).

However, Texas has adopted, in the Code Construction Act, a general savings clause limiting the effect of repeals of and amendments to a statute. *See id.*; TEX. GOV'T CODE ANN. § 311.031 (Vernon 2005). The statute is codified at section 311.031, Government Code, and provides:

(a)    Except as provided by Subsection (b), the reenactment, revision, amendment, or repeal of a statute does not affect:

(1)    the prior operation of the statute or any prior action taken under it;

(2)    any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;

(3)    any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal; or

(4)    any investigation, proceeding, or remedy concerning any privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

(b)    If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

TEX. GOV'T CODE ANN. § 311.031 (Vernon 2005).

"The Legislature's adoption of the general savings clause in the Code Construction Act indicates a general legislative policy that the repeal of any statute shall not affect the prior operation of that statute . . . or affect any right accrued or claim arising before the repeal takes effect." *Quick*, 7 S.W.3d at 129–30. And the court "will presume that the general savings clause applies unless a contrary legislative intent is shown by clear expression or necessary implication." *Id.* at 130.

The general savings clause in the Code Construction Act applies here. No contrary legislative intent is expressed or implied by the Act. Moreover, Title 1 of the Tax Code, which includes chapters 1 through 43, expressly provides that "[t]he Code Construction Act (Chapter 311, Government Code) applies to the construction of each provision of [the] title except as otherwise expressly provided by [the] title." TEX. TAX CODE ANN. § 1.03 (Vernon 2001). We conclude, therefore, that pertinent portions of Tax Code section 6.02, as they existed before the Act, remain effective under the general savings clause.

Prior to the Act, section 6.02(b) was the underlying authority for a multi-county taxing unit to choose to participate in one appraisal district and for the boundaries of the district to extend outside its home county. *See id.* § 6.02(b). Action taken before the Act by a taxing unit under section 6.02(b) to have an appraisal district extend its boundaries and provide its services outside

its home county constitutes an action taken under the prior law. Thus, the general savings clause bars application of the Act to pending cases related to such services to the extent the Act abolishes a district's authority to serve territory outside its home county. *See* TEX. GOV'T CODE ANN. § 311.031(a)(1) (Vernon 2005) (providing the "amendment, or repeal of a statute does not affect . . . the prior operation of the statute or any prior action taken under it"); *see also id.* § 311.031(a)(4) (providing the "amendment, or repeal of a statute does not affect . . . any . . . proceeding, or remedy concerning any privilege, obligation, [or] liability"); *Valero Transmission Co. v. Hays Consol. Indep. Sch. Dist.*, 704 S.W.2d 857, 861 n.1 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (discussing the remedies available to a taxpayer under chapters 41 and 42, Tax Code). In other words, we believe an appraisal district has continuing authority to defend itself in litigation brought under chapter 42 and related to territory outside its home county where a multi-county taxing unit chose to participate in the district in compliance with section 6.02 as that section existed prior to the Act.

As to WCAD's concern regarding the mechanism to fund the pending litigation at issue, WCAD is correct that the section 6.06(d) proportionate cost allocation provision may not generate sufficient funding. *See* WCAD Letter, *supra* note 4, at 2; TEX. TAX CODE ANN. § 6.06(d) (Vernon 2001); Act of May 17, 2007, 80th Leg., R.S., ch. 648, § 6(f), 2007 Tex. Gen. Laws 1223, 1225. Nevertheless, there was a separate cost allocation provision in section 6.02(f) prior to the Act which provided, in relevant part, that "[a]ll costs of operating an appraisal district in territory outside the county for which the appraisal district [was] established are allocated to the taxing unit for which the appraisal district appraise[d] property in that territory." TEX. TAX CODE ANN. § 6.02(f) (Vernon 2001).

The phrase "costs of operating" is not defined in the Tax Code. But read in context, the term necessarily included costs incurred by an appraisal district in relation to judicial review sought under chapter 42. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (directing that "[w]ords and phrases shall be read in context"). An appraisal district is funded solely through the taxing units it serves. *See* TEX. TAX CODE ANN. § 6.062(c) (Vernon 2001). Prior to the Act, three statutory provisions, including sections 6.02, 6.06 and 6.061, addressed a taxing unit's obligation to provide funds to an appraisal district and all spoke in terms of "costs of operating." *See id.* §§ 6.02(f) ("[a]ll costs of operating an appraisal district . . . are allocated to the taxing unit"), 6.06(a) ("the chief appraiser shall prepare a proposed budget for the operations of the district"),6.06 (g) (explaining if a taxing unit does not impose taxes, "the unit is not liable for any of the costs of operating the district"), 6.06 (h) (a newly formed taxing unit or unit that did not impose taxes in the preceding year "is allocated a portion of the amount budgeted to operate the district as if it had imposed taxes in the preceding year, except that the amount of taxes the unit imposes in the current year is used to calculate its allocation"), 6.061(a) ("The board of directors of an appraisal district, . . . may prescribe a different method of allocating the costs of operating the district . . . ."), 6.061(b) ("The taxing units . . . may adopt a different method of allocating the costs of operating the district . . . ."). Neither these nor any other statutory provision provided separately for chapter 42 litigation expenses. But the fact that an appraisal district will be involved in such litigation is expressly contemplated under state law. *See, e.g., id.* § 42.21(b) (providing when a petition for review must name the appraisal district as a party defendant). The most reasonable construction of the statute is, therefore, that the "operating costs" of an appraisal district include the costs incurred in conjunction with chapter 42

litigation.  *See* TEX. GOV'T CODE ANN. § 311.021(3)–(4) (Vernon 2005) (providing that it is presumed that in enacting a statute "a just and reasonable result is intended" and that "a result feasible of execution is intended").

Because "operating costs" under section 6.02(f) necessarily included a district's chapter 42 litigation costs, we conclude that a taxing unit had an obligation under that provision to fund such costs in territory outside a district's home county.  *See* TEX. TAX CODE ANN. § 6.02(f) (Vernon 2001) ("All costs of operating an appraisal district in territory outside the county for which the appraisal district is established are allocated to the taxing unit for which the appraisal district appraises property in that territory.").  And because the general savings clause continues in effect a taxing unit's obligations under section 6.02(f), we conclude WCAD's litigation costs as to chapter 42 cases filed prior to January 1, 2008, are allocated according to section 6.02(f) for territory outside its home county.  *See* TEX. GOV'T CODE ANN. § 311.031(a)(1)–(2) (Vernon 2005) (providing that the amendment or repeal of a statute does not affect the prior operation of the statute and does not affect any obligation acquired, accrued, accorded, or incurred under the statute as it existed before amendment or repeal).

### S U M M A R Y

Waller County Appraisal District is responsible, on or after January 1, 2008, for litigation filed against the district under Tax Code chapter 42 before January 1, 2008, and involving property outside the district's home county.  The general savings clause in the Code Construction Act continues in effect relevant portions of section 6.02, Tax Code, such that the district has continuing authority to defend itself in the pending litigation, and a taxing unit has a continuing obligation to pay the related costs.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee