ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

January 4, 2011

The Honorable Jeff Wentworth
Chair, Senate Select Committee on
    Veterans' Health
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0833

Re: Whether a metropolitan transit authority may, under section 451.616 of the Transportation Code, charge a withdrawn city for special transit services provided to the city's residents with disabilities (RQ-0899-GA)

Dear Senator Wentworth:

On behalf of the City of West Lake Hills (the "City"), you ask whether Capital Metropolitan Transit Authority ("Capital Metro") has "the authority to charge the City for special transit services that Capital Metro provides" to certain residents with disabilities who reside in the City.[1]

You explain that Capital Metro was created in 1985 when voters in Austin and other surrounding municipalities, including the City, approved of its creation. Request Letter at 1. In 1987, the Texas Legislature enacted the predecessor to section 451.603 of the Transportation Code, allowing certain cities to withdraw from a metropolitan rapid transit authority such as Capital Metro.[2] Pursuant to this statute, the City voted to withdraw effective January 19, 1988. *Id.* Subsequent to the City's withdrawal, the Legislature enacted section 451.610 of the Transportation Code, requiring that metropolitan rapid transit authorities "continue to provide transportation services for persons with disabilities in a withdrawn unit of election."[3] Thus, pursuant to this statute, you tell us that "Capital Metro provides special transit services to certain residents with disabilities who reside in the City" despite that the City has withdrawn from Capital Metro. Request Letter at 1.

Alongside section 451.610, the Legislature established a procedure for funding such services:

> The Comptroller shall withhold from the amount of sales and use tax
> revenue refunded to a unit of election that has withdrawn from an

---

[1]Request Letter at 1–2 (*available at* http://www.texasattorneygeneral.gov).

[2]Act of May 22, 1987, 70th Leg., R.S., ch. 790, § 7, 1987 Tex. Gen. Laws 2774, 2777 (amended 1989 &1995) (current version at TEX. TRANSP. CODE ANN. § 451.603 (West 2007)).

[3]Act of May 27, 1991, 72d Leg., R.S., ch. 503, § 6, 1991 Tex. Gen. Laws 1766, 1767 (amended 1995) (current version at TEX. TRANSP. CODE ANN. § 451.610 (West 2007)).

> authority the full amount of the difference between the cost of providing services to persons with disabilities in the unit of election and the fares charged during the period in which the sales and use tax was collected and remit this amount to the authority providing the services.

TEX. TRANSP. CODE ANN. § 451.616(a) (West Supp. 2010). You explain that pursuant to this section, the Comptroller is giving a portion of the City's monthly sales and use tax revenue to Capital Metro as a reimbursement for the cost of providing special transit services to the City's disabled residents. Request Letter at 1. Given that sections 451.610 and 451.616 of the Transportation Code were enacted in 1991, after the City withdrew from Capital Metro, you question whether these statutes are retroactive as applied to the City in violation of the Texas Constitution. *Id.* at 1–2.

Article I, section 16 of the Texas Constitution provides, "No . . . retroactive law . . . shall be made." TEX. CONST. art. I, § 16. "A retroactive law literally means a law that acts on things which are past." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002). When it enacted sections 451.610 and 451.616 of the Transportation Code, the Legislature imposed a new duty on the City to pay for services provided by Capital Metro to the City's disabled residents, but it did so only on a prospective, rather than on a retroactive, basis. Only from the effective date of the statute onward were withdrawn cities required to fund these services. Withdrawn cities may have expected to have no further involvement with such authorities after voting to withdraw. However, "'[a] statute does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law.'" *Quick v. City of Austin*, 7 S.W.3d 109, 132 (Tex. 1998) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)). No entity has a vested right merely in the continuance of present law in relation to a particular subject. *Subaru*, 84 S.W.3d at 219 (citation omitted). The Legislature may change laws so long as it does not destroy or prevent the adequate enforcement of vested rights, neither of which it did here. *Id.*

The City argues through its brief that the Legislature has impaired the City's vested rights by requiring the City to pay Capital Metro for services provided, which, the City argues, unlawfully deprives the City of the use of its sales and use taxes.[4] However, a municipality "acquires no vested rights against the State." *Tooke v. Mexia*, 197 S.W.3d 325, 345 (Tex. 2006); *Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex. 1966). As a creation of the Legislature, a municipality has no privileges or immunities which it may invoke in opposition to the will of its creator. *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933).

We therefore conclude that sections 451.610 and 451.616 of the Transportation Code are not retroactive in violation of article I, section 16 of the Texas Constitution. Capital Metro is not prohibited by that constitutional provision from charging the City for transportation services provided to the City's residents with disabilities pursuant to the Transportation Code.

---

[4]*See* Brief from Alan J. Bojorquez, City Attorney at 2 (Aug. 17, 2010) (on file with the Opinion Committee).

## S U M M A R Y

Sections 451.610 and 451.616 of the Transportation Code are not retroactive statutes in violation of article I, section 16 of the Texas Constitution. Capital Metro is therefore not prohibited by that constitutional provision from charging the City of West Lake Hills for transportation services provided to the City's residents with disabilities pursuant to the Transportation Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee