

# NUMBER 13-17-00229-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

ADAMS GARDEN IRRIGATION DISTRICT # 19,
BAYVIEW IRRIGATION DISTRICT # 11,
BROWNSVILLE IRRIGATION DISTRICT,
CAMERON COUNTY IRRIGATION DISTRICT #2,
CAMERON COUNTY IRRIGATION DISTRICT #6,
CAMERON COUNTY IRRIGATION DISTRICT # 16, ET AL.,   Appellants,

v.

TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY,                                            Appellee.

---

On appeal from the 201st District Court
of Travis County, Texas.

---

# MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Justice Hinojosa

Appellants Adams Garden Irrigation District #19, et al.[1] (collectively, the Water Districts) appeal the trial court's granting of appellee, the Texas Commission on Environmental Quality's (TCEQ's), plea to the jurisdiction.

By three issues, the Water Districts contend that the trial court erred in granting the plea to the jurisdiction as to (1) their administrative appeal, and (2) their declaratory actions. The Water Districts also contend (3) the trial court abused its discretion in striking their Second Amended Original Petition and the additional causes of action asserted therein after it granted the plea to the jurisdiction. We affirm.

## I. BACKGROUND[2]

### A. Texas Water Law

TCEQ has general jurisdiction over surface water rights in Texas. *See* TEX. WATER CODE ANN. § 5.013. This jurisdiction encompasses the administration of Texas's water rights in the Rio Grande, an international river that serves as a boundary between Texas and Mexico from El Paso to Brownsville.

The Rio Grande Watermaster, Jose Luna, operates under the authority of TCEQ's Executive Director, Richard Hyde. The Watermaster's duties are set forth by statute and

---

[1] The appellants also include Bayview Irrigation District #11, Brownsville Irrigation District, Cameron County Irrigation District #2, Cameron County Irrigation District #6, Cameron County Irrigation District #16, Delta Lake Irrigation District, Donna Irrigation District, Engelman Irrigation District, Harlingen Irrigation District Cameron County #1, Hidalgo County Irrigation District #1, Hidalgo County Irrigation District #2, Hidalgo County Irrigation District #5, Hidalgo County Irrigation District #6, Hidalgo and Cameron County Irrigation District #9, Hidalgo County Irrigation District #16, United Irrigation District, and Valley Acres Irrigation District. We refer to them collectively as the Water Districts.

[2] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts); 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

agency rules, but generally, this position is tasked with maintaining records of water usage and to submit a monthly report of water diversions to each water user. *See generally id.* ch. 11; 30 TEX. ADMIN. CODE ch. 303.

Pursuant to these rules, water use is generally administered as follows. First, a water user requests the Watermaster's written authorization to divert water, identifying the water right under which the diversion will be made and the volume and duration of diversion requested. *See* 30 TEX. ADMIN. CODE § 303.11(b). Water must be ordered sufficiently in advance to allow travel time for the released water to reach the point of diversion as scheduled. *See id*. § 303.12(c). If sufficient water is already in the river, travel time may be waived. *See id*. Next, the Watermaster can authorize the diversion, but it cannot exceed either the authorization of the diverter's water right or the amount of usable water available in the diverter's storage account, whichever is less. *See id*. §§ 303.11(c); 303.2(22). After the water has been diverted, the water user reports the amount of water diverted to the Watermaster. *See id*. § 303.11(f). The Watermaster then charges the diverter's storage account for the amount of water requested and diverted. *See id*. § 303.12(e).

The exception to the water diversion calculation is "no charge" water. Under a "No Charge Pumping Order," the Watermaster may authorize diversions from excess flows without the use being charged against the diverters' water rights or storage accounts. *See id*. § 303.12(h) ("Use of no charge water shall not be charged against the allottee's annual surface water use limit or against the allottee's account."). According to the Water Districts, the purpose of no charge water is both to authorize use of water that might

3

otherwise flow unused into the Gulf of Mexico and to conserve water in storage in the Falcon and Amistad Reservoirs when water is otherwise available.

The International Boundary and Water Commission (IBWC) administers the boundary and water treaties between the United States and Mexico, including the treaty for the "Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande," commonly known as the "1944 Treaty." *See* Treaty of the Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande, U.S.–Mexico, Feb. 3, 1944, 59 Stat. 1219, *available at* www.ibwc.gov/Files/1944Treaty.pdf (last visited September 24, 2021) (1944 Treaty). When the IBWC negotiates each country's water obligations under this treaty, those decisions impact TCEQ's administration of water rights in Texas in the affected portions of the Rio Grande.

The 1944 Treaty set forth that all waters from the Rio San Juan, which is a tributary to the Rio Grande below the Falcon and Amistad Reservoirs in Texas, belong to Mexico. *See id*. Under the treaty, the IBWC may allow temporary diversion and use of one country's water when the other does not need it or cannot use it. *See id*. at art. 9(e). The treaty also provides that all diversions must be accounted for and charged to the country authorizing the diversion. *Id*. at arts. 9(c), (j).

From April 1, 2015 through August 15, 2015, Mexico offered water from the Rio San Juan to the United States to reduce its large water deficit in the fifth year of a five-year accounting cycle for the division of water. The IBWC subsequently authorized Texas, and TCEQ, to administer and use this water.

4

## B. Underlying Facts

The Water Districts are a group of eighteen water districts located in South Texas below the Falcon and Amistad Reservoirs and below the confluence of the Rio San Juan and the Rio Grande. Each of these Water Districts has a storage account of water in the Falcon/Amistad Reservoir System. Water available in the reservoirs is allotted to these accounts preferentially to municipal, industrial and domestic accounts, then Class A irrigation and mining accounts, and finally Class B irrigation and mining accounts. *See* 30 TEX. ADMIN. CODE § 303.21–.22.

On April 1, 2014, TCEQ staff propounded a "Rio Grande Watermaster Addendum to Operating Procedures." This addendum set forth new changes, the most significant to this appeal being the following: "No water credited to Mexico for Treaty deliveries will be accepted from the San Juan to provide 'no charge' water." In other words, under this change, excess flows from the Rio San Juan would no longer be available as "no charge" water as they were in the past. Instead, use of this water would be debited from water users' accounts.

According to the pleadings, during the period from April 1, 2015 to August 15, 2015, more than 1.5 million acre-feet of water flowed from the Rio San Juan into the Rio Grande. Luna, acting under the 2014 "No Charge" Addendum, charged these diversions of Rio San Juan water flow to the Water Districts and debited their storage accounts.

The Water Districts claim they communicated their disagreement with this policy change "through multiple communications with the Watermaster and TCEQ management." They also pledged to discuss the matter with the Governor's office. They

5

did not, however, file a written complaint protesting this action until May 24, 2016, when some of the water districts wrote to TCEQ's Executive Director Hyde to have their diversions treated as "no charge" water.[3] *See* 30 TEX. ADMIN. CODE § 303.12(b). Upon reconsideration, TCEQ decided that the agency would no longer charge for diversions from the Rio San Juan to the Water Districts. On June 9, 2016, Executive Director Hyde issued a letter to the Water Districts with an enclosure from the Texas Water Conservation Association (TWCA). Hyde stated: "TCEQ is willing to prospectively account for diversions of water from the Rio San Juan as 'no charge' water . . . ." However, TCEQ refused to reverse the charges to the Water Districts' accounts for the four-month period of time. The enclosure explained TCEQ's reasoning for not crediting the Water Districts' storage accounts:

> Monthly allocations to user accounts are made based upon reserve levels and inflows into the Falcon/Amistad system. When users are charged for Rio San Juan diversions, the reserves are reduced making more water available for allocation to all users. By charging for Rio San Juan diversions, the users from Amistad to the Gulf benefit from Rio San Juan deliveries under the 1944 Treaty, which includes users in both the middle and lower Rio Grande [the Water Districts]. Conversely, only those users downstream from the Rio San Juan in the lower Rio Grande can benefit from "no charge" diversions.
>
> The TCEQ staff has examined how crediting user accounts for 2015 Rio San Juan water as "no charge" water would impact all users in the reservoir system. While a limited number of users would have accounts credited, other users would have accounts debited. As a result, some user accounts, if debited, would go negative for this period, i.e., current account balances would be reduced. Many users have planned for watering seasons based on allocations received.

---

[3] Only fourteen of the eighteen Water Districts were signatories to this letter: Valley Acres and Hidalgo County #5, #6, and #16 did not join the request.

As a result, we do not believe crediting user accounts represents sound public policy, and it is inconsistent with TCEQ rules. Therefore, TCEQ will not retroactively credit user accounts for diversions of Rio San Juan water.

## C.      Subsequent Litigation

The Water Districts filed suit on July 8, 2016 in Travis County district court, seeking to overturn the Rio Grande Watermaster's decision to charge their water accounts for the Rio San Juan diversion waters from April 2015 to August 2015. The original petition set forth three causes of action: (1) an administrative appeal under Texas Water Code § 5.351; (2) declaratory judgment under the Administrative Procedure Act (APA) that the Watermaster could not debit their accounts for diversions of Rio San Juan water; and (3) declaratory judgment under the Uniform Declaratory Judgments Act (UDJA) requesting the same relief.

In response, TCEQ contended that the trial court lacked jurisdiction to hear the case because the Water Districts did not exhaust their administrative remedies before filing suit. Under TCEQ rules, the Water Districts were required to seek redress for any errors in their water accounting within thirty days after receiving their monthly report from the Watermaster. *See* 30 TEX. ADMIN. CODE § 303.12(b). Instead, the Water Districts waited nearly a year after receiving a report showing the disputed charges before voicing their concern to TCEQ about the new "no charge" policy.

The trial court conducted an evidentiary hearing on February 22, 2017. On March 2, 2017, the trial court granted TCEQ's plea to the jurisdiction because of the Water Districts' "[f]ailure to [e]xhaust [a]dministrative [r]emedies." Both parties filed motions for clarification of the order, asking whether it applied to just the administrative appeal under

7

Texas Water Code § 5.351, or whether it applied to all of the Water Districts' claims, including their declaratory actions. While the motions for clarification were pending, the Water Districts filed a second amended original petition, adding a claim that the Rio Grande Watermaster and TCEQ were acting *ultra vires* when they charged the Water Districts for the use of the Rio San Juan water.

On March 21, 2017, the trial court clarified its order by stating the following: "the Court finds that the Court's Order dated March 2, 2017 should be amended to clarify that Defendant's Pleas to the Jurisdiction are GRANTED and each of Plaintiffs' claims should be DISMISSED due to the failure by Plaintiffs to exhaust administrative remedies." The trial court also struck the Water Districts' second amended original petition. This appeal ensued.[4]

## II. PLEA TO THE JURISDICTION

### A. Applicable Law & Standard of Review

"Subject matter jurisdiction is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause of action." *Slay v. Tex. Comm'n on Envtl. Quality*, 351 S.W.3d 532, 544 (Tex. App.—Austin 2011, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). The plaintiff bears the burden of alleging facts that affirmatively show that the trial court has subject-matter jurisdiction. *Id.* To the extent that

---

[4] Although this case was first appealed in 2017, the parties jointly requested that the appeal be abated to allow mediation. This Court abated the case on April 17, 2018, until July 16, 2018, and then granted two subsequent motions to abate the appeal until October of 2019. This Court reinstated the case in October of 2019 due to the parties' representations that they were unable to come to a resolution.

these facts are not negated, we take them as true and construe them liberally with an eye toward the pleader's intent. *Id.* Our ultimate inquiry is whether the pleaded facts would affirmatively demonstrate a claim or claims within the trial court's subject-matter jurisdiction. *Id.*

"Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo.*" *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend. *Tex. Comm'n on Envtl. Quality v. Bonser–Lain*, 438 S.W.3d 887, 893 (Tex. App.—Austin 2014, no pet.) (citing *Miranda*, 133 S.W.3d at 226–27). However, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

## B. Sovereign Immunity

"Sovereign immunity requires the state's consent before it can be sued." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (citing *Miranda*, 133 S.W.3d at 224). "Sovereign immunity developed as a common-law doctrine in recognition of the courts' limited authority over the sovereign creating them." *Id*. (citing *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015)). This immunity operates to protect the public treasury and "shield the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Under Texas law, a trial court does not have subject matter jurisdiction over a claim where a

governmental unit has been sued unless there has been consent from the governmental unit. *Miranda*, 133 S.W.3d at 224. In this case, because TCEQ is a state agency, it enjoys immunity from suit unless it has been waived. *Id.*

### III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In their first issue, the Water Districts contend that the basis for the trial court's ruling—exhaustion of administrative remedies—should not have applied to their administrative appeal.

### A.    Applicable Law

"When the Legislature grants an administrative body the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction over the dispute." *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002); *see also Sierra Club & Pub. Citizen v. Tex. Comm'n on Envtl. Quality*, No. 03-14-00130-CV, 2016 WL 1304928, at *3 (Tex. App.—Austin Mar. 31, 2016, no pet.) (mem. op.). "An agency has exclusive jurisdiction 'when a pervasive regulatory scheme indicates that [the legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'" *Subaru of Am., Inc.*, 84 S.W.3d at 221. The regulatory scheme over water disbursement in Texas is pervasive and indicative of the Texas Legislature's intent to grant TCEQ exclusive jurisdiction over water disbursement disputes. *See* TEX. WATER CODE ANN. § 5.013(a) (granting TCEQ general jurisdiction over "water and water rights including the issuance of water rights permits, water rights adjudication, cancellation of water rights, and enforcement of water rights").

10

It is a well-established rule in Texas that if an administrative body has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the decision. *Subaru of Am., Inc.*, 84 S.W.3d at 221. Until the party has satisfied this exhaustion requirement, the trial court lacks subject matter jurisdiction and must dismiss those claims without prejudice to refiling. *Id.*

**B.     The Administrative Appeal**

The Water Districts filed their administrative appeal in district court under Texas Water Code § 5.351. *See* TEX. WATER CODE ANN. § 5.351. This statute sets forth that a person affected by a TCEQ ruling, order, or decision may file a petition to review in district court "after exhausting any administrative remedies." *Id*. The process by which diversions are reported and can be challenged with TCEQ is set forth in the Texas Administrative Code:

> The watermaster shall timely submit a monthly report to each allottee, or his designated agent, showing the current status of each allottee's account. The period of time covered by each report shall be from the last Saturday of a month at midnight to the last Saturday of the following month at midnight. The report shall designate the date for the end of the watermaster's next reporting period. Each allottee shall apply in writing to the watermaster for correction of any alleged errors in the report within 20 consecutive days following distribution of the monthly report.

30 TEX. ADMIN. CODE § 303.12(b).

Although the no-charge debits occurred from April through August of 2015, the Water Districts did not formally complain about the diversions until they wrote a letter to TCEQ in May of 2016. The Water Districts, in fact, do not deny that they did not comply with agency procedure in this regard. In their brief, the districts contend that § 303.12(b) applies only to alleged mathematical errors and that their complaint was not about the

11

accounting, but rather the change in the no charge rule that led to the accounting. "No error had been made in the Watermaster's administrative accounting; rather, the error was in the agency's decision to charge water users for diversions . . . ." TCEQ counters on appeal that the rule requires a written complaint for *any* alleged error, and that it was incumbent on the Water Districts to timely report this error to the Watermaster per agency rules.

The parties do not refer us to, and we did not find, any definition of "error" in the agency rules. "If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, as there is here, we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). Here, TCEQ's interpretation of its rule is that the Water Districts should have promptly reported "any alleged errors"—whether based in miscalculations or official declarations of policy. Because TCEQ's interpretation of this rule is a reasonable one, we defer to it. *See id*.; *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000) (holding that trial courts should defer to an administrative agency when: (1) an agency is staffed with experts trained in handling issues within the agency's expertise; and because (2) there is a benefit from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations). To exhaust their administrative remedies, the Water Districts were thus required to raise their assertion of error with the Watermaster within twenty days after they first received notice of the charge in their monthly report. They failed to do so.

12

The Water Districts also posit that the imposition of a twenty-day limit for notices of "error" to the Watermaster would prevent them from seeking and obtaining relief directly from the Executive Director. Texas Water Code § 11.326(f) provides that "[a] person dissatisfied with any action of a watermaster may apply to the [TCEQ] executive director for relief." *See* TEX. WATER CODE ANN. § 11.326(f). The Water Districts argue that a requirement to seek review from the Watermaster first is somehow "an obstacle to exercising a right of review expressly provided by the legislature." We are unpersuaded by this argument. Review from the Watermaster is not an obstacle, but rather the first necessary step in the TCEQ administrative complaint procedure.

Accordingly, reviewing the record *de novo*, we conclude the trial court did not err when it granted TCEQ's plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226. The Water Districts did not establish that they exhausted their administrative remedies to invoke the trial court's jurisdiction over their administrative appeal.[5] We overrule this issue.

## IV. DECLARATORY JUDGMENT

By their second issue, the Water Districts contend that the "exhaustion of administrative remedies" requirement did not apply to its declaratory action under § 2001.038 of the APA.[6] *See* TEX. GOV'T CODE ANN. § 2001.038. This statute provides

---

[5] We note that although the Water Districts argued the doctrine of "futility" in their response to TCEQ's plea to the jurisdiction at the trial court level, they did not assert this argument on appeal. *See Ogletree v. Glen Rose Indep. Sch. Dist*., 314 S.W.3d 450 (Tex. App.—Waco 2010, pet. denied). Therefore, we do not address it.

[6] The Water Districts appear to concede that TCEQ had sovereign immunity from the declaratory judgment they assert under the UDJA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003. In their brief, they admit the following:

> [T]here is some merit to TCEQ's sovereign immunity argument. Unless the statutory authorization to seek declaratory judgments regarding the construction or validity of statutes and municipal ordinances is intended to also encompass agency rules, the UDJA

13

that "the validity . . . of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." *Id*.

TCEQ, in response, sets forth four counter-arguments regarding the declaratory judgment actions: (1) the APA declaratory judgment action is only available for the prospective application of agency rules; (2) it is a redundant remedy of the Water Districts' administrative appeal because it seeks judicial review of the Watermaster and Executive Director's actions; (3) it is only available to determine the validity of an agency rule, not the construction of the rule; and (4) it is moot.

## A. Applicable Law

The mootness doctrine implicates subject matter jurisdiction. *City of Shoreacres v. Tex. Comm'n on Envtl. Quality*, 166 S.W.3d 825, 830 (Tex. App.—Austin 2005, no pet.); *Pantera Energy Co. v. R.R. Comm'n of Tex.*, 150 S.W.3d 466, 471 (Tex. App.—Austin 2004, no pet.). An appellate court is prohibited from deciding a moot controversy. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). "This prohibition is rooted in the separation of powers doctrine in the Texas and United States Constitutions that prohibits courts from rendering advisory opinions." *See id*. Generally, an appeal is moot if: (1) there are no live controversies between the parties; and (2) any decision

---

cause of action is likely barred by sovereign immunity. For this reason, the [Water Districts] amended their pleadings to assert that TCEQ officers, in charging storage accounts for use of San Juan Excess Flows, were acting *ultra vires* beyond their statutory and regulatory authority—a clearly recognized exception to UDJA sovereign immunity.

We address the issue regarding the Water Districts' amendment of their pleadings and the trial courts' striking of the same *infra*.

14

rendered by the appellate court would be an advisory opinion. *See Seals v. City of Dallas*, 249 S.W.3d 750, 754 (Tex. App.—Dallas 2008, no pet.).

There are two exceptions that confer jurisdiction regardless of mootness: (1) the issue is "capable of repetition yet evading review"; and (2) the collateral consequences doctrine. *Gen. Land Office of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990); *see Tex. Educ. Agency v. Dallas Indep. Sch. Dist.*, 797 S.W.2d 367, 369 (Tex. App.—Austin 1990, no writ). The "capable of repetition yet evading review" exception has only been used to challenge allegedly unconstitutional acts performed by the government. *See Gen. Land Office*, 789 S.W.2d at 571. It is only applied in rare circumstances. *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998); *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). The exception is limited to situations where the following criteria are present: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, or the party cannot obtain review before the issue becomes moot; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam); *Spencer*, 523 U.S. at 17; *Williams*, 52 S.W.3d at 184; *Gen. Land Office*, 789 S.W.2d at 571. The mere physical or theoretical possibility that the same party may be subjected to the same action again is not sufficient to satisfy the "reasonable expectation" test. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam); *Weinstein*, 423 U.S. at 149.[7]

---

[7] The "collateral consequences" doctrine is not applicable here. It is has been applied when prejudicial events have occurred "whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate. Such effects were not absolved by mere dismissal of the cause as moot." *Gen. Land Office of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569,

**B. Analysis**

TCEQ's live pleading requested the court to declare that:

> TCEQ's Rio Grande Operating Rules and the No Charge Pumping Order cannot be applied to authorize the Watermaster charging storage accounts for diversion of excess flows available from the Rio San Juan or other available sources of water without a release of water from storage in the Falcon/Amistad Reservoir System.

Hyde, however, already agreed that the Water Districts would no longer be charged for diversions from the Rio San Juan. In his letter and enclosure dated June 9, 2016, he set forth that "TCEQ is willing to prospectively account for diversions of water from the Rio San Juan as 'no charge' water." Thus, there is not a live controversy between the parties. *See Seals*, 249 S.W.3d at 754. Any consideration of the merits of this issue would not affect the prospective rights of either party. *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993). Accordingly, any analysis of this issue would be merely advisory. Under these circumstances, we decline this invitation to review the matter. *See Seals*, 249 S.W.3d at 754.

Although the Water Districts assert that this scenario—that of TCEQ "charging" for Rio San Juan water—is "capable of repetition, yet evading review," we disagree that they have met their burden to prove this exception. The Water Districts have not shown that there is a "reasonable expectation" or a "demonstrated probability" that this same exact controversy will recur. *Murphy*, 455 U.S. at 482; *Weinstein*, 423 U.S. at 149. While we recognize it is "theoretically possible" that Mexico might release more of its Rio San Juan

571 (Tex. 1990).

16

reserves to pay down its water debt under the 1944 Treaty at some point, and that TCEQ, as the state agency responsible for surface water rights, could change its "no charge" policy again, these possibilities are not sufficient to satisfy the "reasonable expectation" test. *See Murphy*, 455 U.S. at 482; *Weinstein*, 423 U.S. at 149. To the contrary, Hyde's June 9, 2016 letter demonstrates that this scenario is unlikely to recur. Accordingly, the Water Districts' declaratory judgment claim under the APA is moot.[8] In light of the foregoing, we overrule this issue.

## V. OPPORTUNITY TO AMEND

By their third issue, the Water Districts argue that the trial court erred when it struck its second amended original petition, which added causes of action that the Watermaster and Executive Director acted *ultra vires* when it charged them for water:

> [The Water Districts] request the Court's declaratory judgment that the complained of actions of the Watermaster and the Executive Director, refusing to grant relief from the Watermaster's action, are *ultra vires,* without legal or statutory authority under TCEQ's Rio Grande Watermaster rules, 30 Texas Administrative Code, and the No Charge Pumping Order, and that neither the Watermaster nor the Executive Director was authorized to debit storage accounts for the diversion and use of water from the Rio San Juan (or other available sources of water) in the absence of a requested release from storage.

The Water Districts assert that its *ultra vires* action is not subject to sovereign immunity because Luna and Hyde were acting outside their official authority when they authorized the charges. *See Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015) ("[A]n ultra vires claim is directed toward determining or protecting a party's rights against a state

---

[8] As we set forth in our footnote 6 *supra*, appellees appear to concede that the UDJA declaratory action is barred by TCEQ's sovereign immunity. However, even if the UDJA action was not barred for this reason, it is barred by mootness for the same reasons we explained the APA declaratory judgment is not justiciable.

17

official acting without legal or statutory authority, and is not barred by sovereign immunity. . . . To fall within this ultra vires exception, a plaintiff must allege and prove that the state official acted without legal authority or failed to perform a ministerial act."). However, when a court grants a defendant's plea to the jurisdiction that will dispose of the entire case, it may only allow a plaintiff the opportunity to replead if repleading would cure the jurisdictional defect. *See Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867–68 (Tex. 2002) (per curiam). We conclude that repleading could not cure the jurisdictional defects.

First, assuming without deciding that Luna and Hyde were acting outside their official capacities when the Water Districts were charged for Rio San Juan water, the Water Districts would be entitled only to prospective injunctive relief on this claim. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 376 (Tex. 2009) (noting that "a claimant who successfully proves an *ultra vires* claim is entitled to prospective injunctive relief" but may not obtain retroactive relief such as damages). And as previously explained, to the extent the Water Districts seek an injunction preventing "the Watermaster []or the Executive Director [from] debit[ing] storage accounts" on a prospective basis, that issue is moot as TCEQ agreed to no longer charge for Rio San Juan excess waters. Re-pleading will not cure this defect. *See Ramirez*, 74 S.W.3d at 867–68.

Second, we conclude that the Watermaster and Executive Director's actions regarding the no-charge policy could not be recast as *ultra vires* acts for merely interpreting, or even misinterpreting, their own agency rules. *See Hall*, 508 S.W.3d at 242. An ultra vires claim is (1) an action "without legal authority" or a (2) failure to "perform a

18

purely ministerial act." *City of El Paso*, 284 S.W.3d at 373. The Texas Supreme Court has held as follows:

> When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous. Our intermediate courts of appeals have repeatedly stated that it is not an *ultra vires* act for an official or agency to make an erroneous decision while staying within its authority. Indeed, an *ultra vires* doctrine that requires nothing more than an identifiable mistake would not be a narrow exception to immunity: it would swallow immunity. After all, do not all successful lawsuits require a legal wrong? As important as a mistake may be, sovereign immunity comes with a price; it often allows the 'improvident actions' of the government to go unredressed. Only when these improvident actions are *unauthorized* does an official shed the cloak of the sovereign and act *ultra vires*.

*Hall*, 508 S.W.3d at 242-43 (internal citations omitted). Here, the Water Districts' attempt to recast the same complaint they had in their administrative appeal and in their declaratory judgment actions as an *ultra vires* act does not cure the jurisdictional defect. *See id*.; *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016) (holding that sovereign immunity "bars suits complaining of an exercise of *absolute* discretion but not suits complaining of . . . an officer's exercise of judgment or *limited* discretion without reference to or in conflict with the constraints of the law authorizing the official to act") (emphasis in original). The Watermaster and Executive Director had the discretion to interpret their rules and the statute regarding no charge debits. *See Combs*, 340 S.W.3d at 438; *Bennett*, 35 S.W.3d at 18. They are thus accorded immunity from suit, even if their interpretations were incorrect. *See id*. Accordingly, the trial court did not abuse its discretion when it struck the Water Districts' second amended original petition. We overrule this issue.

19

## VI.   CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA<br>
Justice

Delivered and filed on the
21st day of October, 2021.