

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

### NOS. PD-0522-21, PD-0523-21, PD-0524-21, & PD-0525-21

### EX PARTE ROBBIE GAIL CHARETTE

### ON STATE'S MOTION FOR REHEARING AFTER OPINION
### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### WASHINGTON COUNTY

**RICHARDSON, J., filed a concurring opinion in which NEWELL, J., joined.**

## CONCURRING OPINION

Upon the State's motion for rehearing, the majority withdraws and reverses our prior opinion in this case. I respectfully concur only in the result because the Legislature has since amended the statutes relevant to the controversy and applied them retroactively.

In our original opinion, we held that the Texas Ethic Commission (TEC) was a "constitutionally-created state agency" charged with upholding "the constitutional privilege of free suffrage by regulating elections and prohibiting undue influence" and "the constitutional right of the governed to apply to their government for the redress of

grievances." *Ex parte Charette*, Nos. PD-0522-21, PD-0523-21, PD-0524-21, & PD-0525-21, 2024 WL 4138710, at *1 (Tex. Crim. App. Sept. 11, 2024), *reh'g granted* (Jan. 15., 2025).[1] Furthermore, we held that Government Code Chapter 571 (regulating election code violations), consistent with the Texas Constitution, was a "pervasive regulatory scheme" designed, in part, to prevent any partisan temptation to exercise prosecutorial discretion for political purposes. *Id*. at *10-11. Adhering to the Legislature's design, we correctly required that complaints regarding the conduct of elected officials and candidates for public office either first be procedurally exhausted at the TEC or referred by the TEC before any potential criminal charges could be filed.[2]

Today, the majority withdraws this decision even though the TEC's mission to prevent partisan "lawfare" by political opponents remains the same. Nevertheless, the Legislature has since amended the Government Code via Section 23.002, which states:

> Unless expressly provided otherwise, the exhaustion of civil, including administrative, remedies is not a prerequisite to the vesting in a trial court of

---

[1] Our majority opinion, designated for publication on September 11, 2024, is attached here for reference.

[2] [T]he issue here is actually the trial court's lack of subject matter jurisdiction [as a result of the pervasive regulatory scheme], not whether the special prosecutor has authority to pursue criminal charges. Even so, it is worth noting that nothing in the TEC's enforcement scheme conflicts with the district and county attorney's constitutional duty to represent the State in all cases *in the district and inferior courts*. If a case cannot be filed in the trial courts based on a lack of subject matter jurisdiction, then necessarily the district and county attorneys cannot represent the State in the trial courts for such matters.

*Ex parte Charette*, Nos. PD-0522-21, PD-0523-21, PD-0524-21, & PD-0525-21, 2024 WL 4138710, at *11 (Tex. Crim. App. 2024), reh'g granted (Jan. 15., 2025).

2

> subject matter jurisdiction over a criminal action for which the trial court would otherwise have jurisdiction under other law.

Tex. Gov't Code § 23.002. The Legislature has also made this provision retroactive to all cases before its passage. *Id.* And because this does not violate the constitutional prohibition against *ex post facto* regulations, I respectfully concur in only the result that our prior decision must be reversed.

Filed: August 20, 2025

Publish



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0522-21, PD-0523-21, PD-0524-21, & PD-0525-21

### EX PARTE ROBBIE GAIL CHARETTE, Appellant

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS WASHINGTON COUNTY

SLAUGHTER, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, and WALKER, JJ., joined. KELLER, P.J., filed a dissenting opinion in which YEARY and KEEL, JJ., joined. MCCLURE, J., concurred.

## O P I N I O N

The Texas Ethics Commission ("TEC") is a constitutionally-created state agency with "the powers and duties provided by law." TEX. CONST. ART. III, §24a. Those "powers and duties" are set forth in Chapter 571 of the Texas Government Code. The stated purpose of Chapter 571 (and by extension, the TEC) is to "protect the constitutional privilege of

free suffrage by regulating elections and prohibiting undue influence while also protecting the constitutional right of the governed to apply to their government for the redress of grievances." TEX. GOV'T CODE § 571.001. To further this purpose, the statutes in Chapter 571 "shall be construed to . . . eliminate opportunities for undue influence over elections and governmental actions," and "to ensure the public's confidence and trust in its government." *Id.*

To effectuate this purpose, the Legislature instructed that the TEC "shall administer and enforce" various enumerated Election Code and Government Code provisions. *Id.* § 571.061. Most of the enumerated statutes set forth regulations on the conduct of political candidates and elected public servants which, if violated, can give rise to criminal liability. Chapter 571 also establishes a detailed procedural scheme that the TEC must follow in investigating and addressing alleged violations of election and campaign laws. Such procedures include a process for receiving sworn complaints, holding multiple hearings, issuing civil disciplinary action, and, if appropriate, referring violators for criminal prosecution. *See* TEX. GOV'T CODE § 571.121 *et seq*. The statutes also mandate that the TEC maintain confidentiality of all matters until a determination on a sworn complaint has been reached. This is to guard against unfairly impacting a political campaign or the elections process through the public release of uninvestigated allegations.

In this case, which solely involves statutes within the TEC's purview, no sworn complaint was filed with TEC, and so no TEC investigatory process took place. Instead, a special prosecutor pursued criminal charges against a political candidate for campaign law violations shortly before a primary election, with no prior TEC referral. Appellant then

complained in a pretrial habeas application that the prosecution was unauthorized in the absence of prior TEC proceedings. The question raised by this case, therefore, is whether Chapter 571 establishes a "pervasive regulatory scheme" which demonstrates that the Legislature intended for the TEC to have exclusive jurisdiction over "the problem to which the regulation is addressed." *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). If so, then a *trial court* lacks subject matter jurisdiction over any offenses within the TEC's purview unless and until the TEC has made a final determination on the allegations. If the trial court lacks subject matter jurisdiction, then a prosecutor has no authority to invoke the jurisdiction of the trial court for a criminal prosecution.

We conclude that the relevant constitutional and statutory provisions establish that the Legislature intended for the TEC to have exclusive jurisdiction over the offenses listed in Chapter 571. Therefore, exhaustion of administrative remedies in the TEC is a jurisdictional prerequisite to the bringing of criminal charges against a political candidate for campaign-law violations. The defendant in this case was criminally charged for campaign-law violations absent any prior proceedings in the TEC or a referral for criminal prosecution by the TEC. Accordingly, the trial court lacked subject matter jurisdiction over these charges, and it should have dismissed them. We, therefore, hold that pretrial habeas relief is warranted. We reverse the judgment of the court of appeals and order dismissal of the indictments.

# I.    Background

## A.    Factual Background and Trial Court Proceedings

In 2018, Robbie Gail Charette, Appellant, was a Republican candidate for Judge of the County Court-at-Law in Washington County. Shortly before the primary election, someone filed a complaint with the Washington County District Attorney's Office alleging that Appellant had violated several campaign laws.[1] The District Attorney recused himself, and a special prosecutor from neighboring Austin County was appointed to review the allegations.

In June 2018, a grand jury indicted Appellant on four misdemeanor charges, which included: (1) knowingly misrepresenting the true source of a campaign communication;[2] (2) knowingly representing in a campaign communication that Appellant held a public office she did not hold;[3] (3) failing to timely file a personal financial statement;[4] and (4) failing to maintain a proper record of political expenditures in excess of $100.[5]

Appellant filed an "application for pretrial writ of habeas corpus and/or first motion to quash and dismiss the indictment as prosecution improperly brought." Appellant argued that the indictments were void as a result of the State's "complete failure to comply with applicable Texas constitutional and statutory procedure requiring the Texas [Ethics] Commission's oversight of the alleged violations[.]" Specifically, Appellant contended that, pursuant to the provisions in Article III, Section 24a of the Texas Constitution and

---

[1] Appellant alleges that the complaint was made by her political opponents and/or their supporters. However, the identity of the complaining parties is not apparent from the record.

[2] TEX. ELEC. CODE § 255.004.

[3] TEX. ELEC. CODE § 255.006.

[4] TEX. LOC. GOV'T CODE §§ 159.052, 159.056; TEX. GOV'T CODE § 572.027.

[5] TEX. ELEC. CODE § 254.001.

Texas Government Code Chapter 571, enforcement of the violations at issue must be initiated by a sworn complaint to the TEC, *see* TEX. GOV'T CODE § 571.122, followed by an administrative review process, which includes notice to the accused, an opportunity to respond, and multiple hearings, if necessary. *Id.* §§ 571.124 through 571.129. Appellant further observed that the Government Code contains a provision indicating that the Commission may "refer matters to the appropriate prosecuting attorney for criminal prosecution" only upon the vote of six of eight members of the TEC. *Id.* § 571.171(a). Thus, because Appellant did not receive any of these procedural protections before being criminally charged in these cases, she argued that the prosecution was unauthorized or, alternatively, that her rights to due process and due course of law had been irreparably violated, such that dismissal of the indictments was warranted.

The State, represented by the Special Prosecutor, responded that Appellant's application should be dismissed for failing to allege a cognizable basis for pretrial habeas corpus relief. Specifically, the State contended that TEC proceedings were civil in nature and that a pretrial writ of habeas corpus in a criminal case could not "be used to collaterally complain about deprivation of civil due process rights by a regulatory commission." Alternatively, the State urged that relief should be denied on the merits because the TEC has no "jurisdiction, discretion, or authority over a prosecutor's decision to investigate and prosecute crimes." The State further cited separation of powers principles under Article V, Section 21, of the Texas Constitution and contended that "County and District Attorneys have the right to prosecute any crimes within their jurisdictions, and any effort to infringe on that right is unconstitutional."

The trial court held a hearing on Appellant's claims. During the hearing, Appellant offered into evidence a letter from the TEC confirming that no sworn complaint had been filed against her, nor had the TEC undertaken any investigation nor referred Appellant to the district attorney for criminal prosecution.

The trial court ultimately rejected Appellant's arguments. In its order denying relief, the court noted that it had found "no legislative language that grants the Commission the exclusive authority to enforce" the violations for which Appellant was charged. The court further reasoned that the "Legislature did not grant the Commission any authority over criminal prosecution. It has only allowed the Commission the authority 'to refer matters to the appropriate prosecuting attorney for criminal prosecution.'" (quoting TEX. GOV'T CODE § 571.171(a)). Thus, "any district attorney may conduct an investigation on his own initiative to determine if criminal conduct occurred in connection with an election," and there is "no requirement for the district attorney to present the results of an investigation in connection with an election or campaign finance laws to [TEC] prior to commencement of criminal prosecution."

### B. On Appeal

On direct appeal from the trial court's order denying Appellant pretrial habeas relief, the court of appeals upheld the trial court's ruling. *Charette v. State*, Nos. 14-19-00855-CR, 14-19-00856-CR, 14-19-00857-CR, 14-19-00858-CR, 2021 WL 1538197, at *2 (Tex. App.—Houston [14th Dist.] April 20, 2021) (mem. op., not designated for publication). The court explained that "appellant's current arguments, even if true, fail to deprive the Washington County District Court of jurisdiction over her cases or warrant her immediate

release." *Id*. at \*3. The court reasoned that the district court was vested with original jurisdiction over all misdemeanors involving "official misconduct," which includes misconduct by candidates for political office. *Id.*[6] Thus, because the misdemeanor charges here derived from crimes Appellant was alleged to have knowingly committed while acting as a candidate for public office in Washington County, "jurisdiction properly vested in the district court[.]" *Id.* The court of appeals concluded, "Appellant has not and cannot establish how a denial of any alleged civil due process rights afforded by a TEC investigation deprives the district court in Washington County of jurisdiction over her indictments." *Id.* Accordingly, the court concluded that neither of appellant's issues were cognizable in a pretrial habeas corpus proceeding. *Id.*

Appellant then filed a petition for discretionary review challenging the court of appeals' holding, which this Court granted on two grounds.[7]

## II. Analysis

### A. Cognizability of Appellant's Claims on Pretrial Habeas

---

[6] *See* TEX. CODE CRIM. PROC. ARTS. 4.05 ("District courts and criminal district courts shall have original jurisdiction . . . of all misdemeanors involving official misconduct . . ."); 3.04(1) (defining official misconduct as "an offense that is an intentional or knowing violation of a law committed by a public servant while acting in an official capacity as a public servant"); TEX. PENAL CODE § 1.07(a)(41)(E) (defining a public servant to include "a candidate for nomination or election to public office").

[7] Appellant's grounds for review ask:

(1) "Did the special prosecutor lack standing or authority to prosecute alleged misdemeanor violations of the Election Code and Government Code without the referral from the TEC required by Texas Government Code § 571.171?"; and

(2) "Was Appellant deprived of due process when the District Attorney's office leapfrogged the TEC procedure, which was a prerequisite to prosecution?"

Appellant's claims give rise to a cognizable basis for pretrial habeas relief because they implicate both the trial court's jurisdiction over these offenses and Appellant's right to avoid trial in the absence of prior TEC proceedings. Therefore, consideration of the merits of Appellant's claims is proper, and the court of appeals erred by holding otherwise.

### 1. Relevant Law

Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy that is available only in limited circumstances. *Ex parte Vieira*, 676 S.W.3d 654, 657 (Tex. Crim. App. 2023); *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005). This remedy is reserved for "'situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.'" *Ex parte Ingram*, 533 S.W.3d 887, 891 (Tex. Crim. App. 2017) (quoting *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001)). The remedy is not available "when the question presented, even if resolved in the defendant's favor, would not result in immediate release." *Id.* In other words, "[i]f the relief sought would not prevent prosecution, pretrial habeas is unavailable." *Ex parte Couch*, 678 S.W.3d 1, 4 (Tex. Crim. App. 2023). Further, pretrial habeas is not available if the resolution of a claim may be aided by development of a record at trial. *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010). One recognized exception to this rule, however, is when the right at issue includes a right to avoid trial, such as the constitutional protection against double jeopardy. *Ingram*, 533 S.W.3d at 892.

In *Ex parte Smith*, this Court identified three circumstances in which a defendant may pursue a pretrial writ of habeas corpus: (1) challenges to the State's power to restrain

the defendant; (2) challenges to the manner of pretrial restraint (i.e. denial of bail or conditions of bail); or (3) "issues which, if meritorious, would bar prosecution or conviction." *Smith*, 178 S.W.3d at 801. Addressing the last of these categories in *Ex parte Couch*, we explained that those types of issues result in the trial court being "deprived of the power to proceed[.]" *Couch*, 678 S.W.3d at 7; *see also Weise*, 685 S.W.3d at 619 (stating that cognizability of pretrial claim may depend on "whether the alleged defect would bring into question the trial court's power to proceed"). We have also recognized that certain claims are cognizable in a pretrial writ of habeas corpus based on the nature of the underlying rights—that is, where the rights at issue "would be effectively undermined if not vindicated before trial." *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016) (plurality op.); *see Ex parte Sheffield*, 685 S.W.3d 86, 94 (Tex. Crim. App. 2023) (recognizing that a majority of the Court in *Perry* "reaffirmed that certain types of claims may be raised by pretrial habeas because the rights underlying those claims would be effectively undermined if not vindicated before trial").

### 2.    Appellant's claims are cognizable on pretrial habeas.

Appellant's arguments in this case boil down to a claim that the Legislature has bestowed exclusive authority upon the TEC to make an initial determination with respect to any alleged violation of the campaign or election laws under its purview. Specifically, she contends that through the array of statutes in Government Code Chapter 571 defining the TEC's authority and procedures for evaluating a sworn complaint alleging an election-law violation, the Legislature has mandated that criminal prosecution for the specified

offenses[8] can be initiated *only after* the statutory requirements have been satisfied—including the requirement of a vote by the Commissioners to "refer matters to the appropriate prosecuting attorney for criminal prosecution." TEX. GOV'T CODE § 571.171(a). As explained in our analysis of the merits below, we understand Appellant's argument to be that she is constitutionally and statutorily entitled to the exhaustion of administrative remedies in the TEC before any criminal prosecution for these offenses can occur. *See, e.g., David McDavid Nissan, Inc.*, 84 S.W.3d at 221 (recognizing that the Legislature may grant an administrative agency "the *sole* authority to make an initial determination in a dispute;" under those circumstances, "a party must exhaust all administrative remedies before seeking judicial review of the agency's action. Until then, the trial court *lacks subject matter jurisdiction and must dismiss the claims* within the agency's exclusive jurisdiction.") (emphasis added). Because Appellant's arguments implicate the trial court's subject matter jurisdiction, such a claim plainly constitutes a challenge to the trial court's "power to proceed." *See Couch*, 678 S.W.3d at 7.

---

[8] As we discuss further below in our analysis of the merits, Chapter 571 expressly grants the TEC the authority to "administer and enforce" enumerated provisions, including:

(1) [Government Code] Chapters 302, 303, 305, 572, and 2004;

(2) Subchapter C, Chapter 159, Local Government Code, in connection with a county judicial officer, as defined by Section 159.051, Local Government Code, who elects to file a financial statement with the commission;

(3) Title 15, Election Code [Election Code Section 251.001 *et seq*.]; and

(4) [Government Code] Sections 2152.064 and 2155.003.

TEX. GOV'T CODE § 571.061.

Further, Appellant's arguments implicate rights that would be effectively undermined if they could not be vindicated before trial. *See Perry*, 483 S.W.3d at 895. Because Appellant contends that she is entitled to have the TEC conduct its administrative review process before she can be criminally charged and tried for these offenses, her entitlement to this process would be wholly undermined if she were required to endure a trial before she could complain about the deprivation of such process. Moreover, if Appellant were required to go to trial without the opportunity for a hearing and possible resolution of these allegations in the TEC, then she would have forever lost the opportunity to avoid criminal charges by potentially obtaining a vote of "no" by the TEC on the question of whether she should be referred for prosecution. Appellant's asserted right to the exhaustion of administrative remedies cannot be vindicated through the post-trial appellate process and thus is appropriate for pretrial resolution.

The court of appeals summarily resolved the question of cognizability here by holding that TEC's administrative procedures are merely "civil" in nature and could have no bearing on Appellant's criminal cases. *See Charette*, 2021 WL 1538197, at *3 ("Appellant has not and cannot establish how a denial of any alleged civil due process rights afforded by a TEC investigation deprives the district court in Washington County of jurisdiction over her indictments."). It erred by conflating the merits with the issue of cognizability, and then by reaching a conclusion on the merits without considering any of the applicable constitutional or statutory provisions. Based on the foregoing established

cognizability principles, we conclude that Appellant's claims are cognizable, and we will proceed to consider the merits.[9]

**B.    The Texas Ethics Commission has both constitutional and statutory authority to address Appellant's alleged violations.**

In addressing the merits of this issue, the special prosecutor contends that because the Texas Constitution assigns district and county attorneys the duty to represent the State in all cases in the trial courts, this somehow prevents the Legislature from giving the TEC exclusive jurisdiction to address alleged campaign-law violations in the first instance. This argument is flawed on two main fronts.

First and foremost, the question here is not whether the district attorney has prosecutorial power. Instead, it is whether the trial court lacked jurisdiction. As addressed below, the Legislature has bestowed upon the TEC exclusive jurisdiction to conduct an initial review of Appellant's alleged campaign-law violations. Therefore, the trial court lacks jurisdiction to hear these cases until administrative remedies have been exhausted through the TEC.

Second, the Texas Constitution gives the TEC "the powers and duties provided by law," and none of its powers or duties conflicts with the district and county attorneys' constitutional duty. The "law" (Texas Government Code Chapter 571) mandates that the

---

[9] Given our holding on this matter, it would be plausible for us to remand this case to the court of appeals for it to conduct a proper analysis of the merits. However, in the interest of judicial economy, and because the issue before us is a pure matter of law, we will address the merits here on discretionary review in the first instance. *See Perry*, 483 S.W.3d at 900 n.85 (addressing the merits of Governor Perry's pretrial separation of powers claim in the first instance on discretionary review and citing "the importance of the interests protected by the Separation of Powers clause, the purely legal nature of the issue before us, and concerns of judicial economy").

TEC "***shall*** administer and enforce" certain laws pertaining to elections and campaigns for public office. The majority of these laws that are to be administered and enforced *by the TEC* list regulations which, if violated, could potentially give rise to criminal charges. But none of the TEC's statutory enforcement mechanisms include filing criminal charges or representing the State in the trial courts in criminal cases. Thus, the Legislature's statutory framework of giving exclusive initial jurisdiction over these matters to the TEC takes nothing away from the district and county attorneys' constitutional duty to represent the State in the trial courts. The fact that district and county attorneys are prohibited from prosecuting certain matters until there has been a referral for prosecution by the TEC is merely a regulation of a trial court's jurisdiction and when matters can be filed in the trial courts on behalf of the State.

1.  **The exclusive jurisdiction doctrine allows the Legislature to dictate that an administrative agency has sole authority to make an initial determination in a dispute.**

The Texas Constitution states that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, *except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.*" TEX. CONST. ART. V, § 8 (emphasis added). Therefore, the "Constitution or other law" can confer jurisdiction that would otherwise belong to a district court onto a different entity, such as an administrative agency like the TEC. But "administrative bodies only have the powers conferred on them by clear and express statutory language *or implied powers* that

are reasonably necessary to carry out the Legislature's intent." *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006) (emphasis added).

"When the Legislature grants an administrative body the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction over the dispute." *Id.* This is referred to as the exclusive jurisdiction doctrine. *David McDavid Nissan*, 84 S.W.3d at 221 (observing that an administrative agency has exclusive jurisdiction where a "pervasive regulatory scheme" indicates legislative intent for the regulatory process to "be the exclusive means of remedying the problem to which the regulation is addressed") (citation omitted).

Typically, under the exclusive jurisdiction doctrine, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Id.*; *see also In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004) (citing *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)). "Until the party has exhausted all administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction." *Entergy Corp.,* 142 S.W.3d at 321-22 (citing *David McDavid Nissan*, 84 S.W.3d at 221).

A statute will often expressly specify that an agency has "original jurisdiction" or "exclusive jurisdiction" over certain matters, but not always. And there are several state agencies that the Texas Supreme Court has held to have exclusive jurisdiction despite the magic words "exclusive jurisdiction" being absent from the applicable statutes. *See* discussion, *infra*. In determining whether an agency has "exclusive jurisdiction," courts must examine the complete statutory scheme to determine if the Legislature intended for

an administrative agency to have sole authority to make an initial determination in a particular dispute. *David McDavid Nissan*, 84 S.W.3d at 221; *Long*, 207 S.W.3d at 340. Courts should also "allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *David McDavid Nissan*, 84 S.W.3d at 221. Questions of statutory interpretation are matters of law subject to *de novo* review. *Id.* at 222.

In *Thomas v. Long*, the Texas Supreme Court was tasked with determining whether the Harris County Sheriff's Department Civil Service Commission had exclusive jurisdiction over Plaintiff Jeanne Long's employment disputes such that the trial court lacked subject matter jurisdiction. 207 S.W.3d at 340. The Supreme Court first noted that there was "no express legislative indication of exclusive jurisdiction." *Id.* The Supreme Court went on to examine "the legislative scheme to determine if the Legislature intended the Commission to have sole authority to make the initial determination" in Long's employment dispute. *Id.*

After examining the statutory scheme establishing the Commission and its powers, along with the Commission's rules and procedures, the Supreme Court determined that the Commission did, in fact, have exclusive jurisdiction because "the Commission is authorized by statute to regulate employment matters in the sheriff's department." *Id.* at 341. The Supreme Court specifically pointed to Texas Local Government Code Section

158.035, titled "Powers of the Commission," and the rules and procedures adopted by the Commission. Section 158.035 provided that:

(a) The commission shall adopt, publish, and enforce rules regarding:

(1) selection and classification of employees;

(2) competitive examinations;

(3) promotions, seniority, and tenure;

(4) layoffs and dismissals;

(5) disciplinary actions;

(6) grievance procedures;

(7) the rights of employees during an internal investigation; and

(8) other matters relating to the selection of employees and the procedural and substantive rights, advancement, benefits, and working conditions of employees.

The Commission's adopted rules and procedures included disciplinary actions and provided that "just cause" must support disciplinary action against an employee. *Long*, 207 S.W.3d at 341. The Supreme Court noted that Texas is an employment-at-will state and, subject to certain restrictions, most employment is terminable at any time by either party, with or without cause. *Id.* Therefore, the Commission's rules, as authorized by the statute, created rights that employees do not have under the common law. *Id.* And employees can enforce these rights by following the procedures established by the Commission's rules. *Id.* Thus, even though the statutory scheme had no express provision bestowing exclusive jurisdiction upon the Commission, the statutory scheme overall evinced the Legislature's intent that the Commission have exclusive jurisdiction over the Harris County Sheriff's

Department's employment matters. *Id*. at 342 ("We hold that once the employees of a department elect to create a commission, and the commission's rules create rights employees would not have at common law, the commission obtains exclusive jurisdiction over those matters.").

Similarly, the statutes creating and governing the TEC, the stated purpose of the TEC, the statutes to be administered and enforced by the TEC that are directed solely at election-related and public-service matters, along with the statutorily-authorized rules and regulations adopted by the TEC, all demonstrate that the Legislature intended the TEC to have exclusive jurisdiction over all matters within its purview, unless specifically exempted.

> **2.      The TEC has exclusive jurisdiction to make an initial determination regarding Appellant's alleged violations.**

To determine whether the Legislature intended the TEC to have exclusive jurisdiction over matters within its purview, we examine the statutory scheme. The TEC was created in 1991, when Texas voters adopted Article III, Section 24a of the Texas Constitution. TEX. CONST. ART. III, § 24a. Because the TEC is tasked with duties involving election and campaign laws, the Constitution requires the TEC to be a bipartisan organization. *Id.* It instructs that the TEC must consist of eight members with an equal number of members from each major political party that are appointed by the governor, the speaker of the house, and the lieutenant governor. *Id.* § 24a (a)(1)–(4).

The Texas Constitution endows the TEC with "the powers and duties provided by law," as set forth in Chapter 571 of the Government Code. *Id.* § 24a(d). The Legislature

assigned these powers and duties to the TEC to "protect the constitutional privilege of free suffrage by regulating elections and prohibiting undue influence while also protecting the constitutional right of the governed to apply to their government for the redress of grievances." TEX. GOV'T CODE § 571.001. The Legislature instructed that the statutes "shall be construed to . . . eliminate opportunities for undue influence over elections and governmental actions" and "to ensure the public's confidence and trust in its government." *Id.*

Chapter 571 sets out the TEC's mandatory duty to "enforce" certain laws pertaining to elections and campaigns for public office. TEX. GOV'T CODE § 571.061. It states:

(a) The commission **shall** administer **and enforce**:

(1) [Government Code] Chapters 302, 303, 305, 572, and 2004;

(2) Subchapter C, Chapter 159, Local Government Code,[1] [Section 159.051 *et seq.*] in connection with a county judicial officer, as defined by Section 159.051, Local Government Code, who elects to file a financial statement with the commission;

(3) Title 15, Election Code;[2] [Election Code Section 251.001 *et seq.*] and

(4) [Government Code] Sections 2152.064 and 2155.003.

(b) The commission shall perform any other powers or duties given to the commission under a law listed in Subsection (a).

*Id.* (emphasis added). The majority of the specified statutes that the TEC "shall administer and enforce" include criminal offenses. In fact, in Title 15 of the Texas Election Code alone, there are 36 statutes that list criminal offenses. *See* TEX. ELEC. CODE § 252.003 (Class C misdemeanor); § 253.001 (Class A misdemeanor); § 253.003 (Class A misdemeanor or 3rd degree felony); § 253.004 (Class A misdemeanor); § 253.005 (Class A

misdemeanor); § 253.031 (Class A misdemeanor); § 253.032 (Class A misdemeanor); § 253.033 (Class A misdemeanor); § 253.034 (Class A misdemeanor); § 253.0341 (Class A misdemeanor); § 253.037 (Class A misdemeanor); § 253.038 (Class A misdemeanor); § 253.039 (Class A misdemeanor); § 253.040 (Class B misdemeanor); § 253.041 (Class A misdemeanor); § 253.042 (Class A misdemeanor); § 253.094 (3rd degree felony); § 253.101 (3rd degree felony); § 253.102 (3rd degree felony); § 253.103 (3rd degree felony); § 253.104 (3rd degree felony); § 254.001 (Class B misdemeanor); § 254.034 (Class A misdemeanor); § 254.041 (Class C or Class A misdemeanor); § 254.128 (Class A misdemeanor); § 254.129 (Class B misdemeanor); § 254.203 (Class A misdemeanor); § 255.002 (Class C misdemeanor); § 255.003 (Class A misdemeanor); § 255.0031 (Class A misdemeanor); § 255.004 (Class A misdemeanor); § 255.005 (Class A misdemeanor); § 255.006 (Class A misdemeanor); § 257.004 (3rd degree felony); § 257.006 (Class A misdemeanor); § 259.001 (Class C misdemeanor).

Section 571.121, entitled "General Powers," provides that the Commission may "(1) hold hearings, on its own motion adopted by an affirmative vote of at least six commission members or on a sworn complaint, and render decisions on complaints or reports of violations as provided by this chapter; and (2) agree to the settlement of issues." TEX. GOV'T CODE § 571.171(a). But it "may not consider a complaint or vote to investigate a matter outside the commission's *jurisdiction*." *Id.* § 571.171(b) (emphasis added).

Chapter 571 sets forth a series of enforcement mechanisms that start with an investigation process. First, a person may file a sworn complaint with the TEC "alleging that a person subject to a law administered and enforced by the commission has violated a

rule adopted by or a law administered and enforced by the commission." *Id*. § 571.122(a). The complaint must be filed under oath by a resident of this state and cannot be anonymous. *Id*. § 571.122(b), (b-1). The complaint itself, and the preliminary proceedings, are confidential and cannot be disclosed to the public until it has been determined whether a violation has occurred. *Id*. § 571.140. At any stage, if an alleged violation is that a "statement, registration, or report" contains an error, the commission "shall dismiss" the complaint if the respondent corrects the error before the commission accepts jurisdiction over the complaint, so long as the correction "remedies the alleged violation." *Id*. § 571.1233.

After receipt of a complaint, the commission's executive director "shall determine in writing whether the commission *has jurisdiction over the violation of law alleged* in a sworn complaint." *Id*. § 571.124 (emphasis added). If it is determined that the commission has jurisdiction, then the commission must provide written notice to the respondent. *Id*. § 571.123. A preliminary review process follows, which may proceed to an informal hearing, possibly followed by a formal hearing, as required by the statutory provisions.[10] *Id*.

---

[10] After receiving the complaint, the commission must "immediately" notify the respondent, who must then respond to the notice within a specified time period. TEX. GOV'T CODE §§ 571.123(b), 571.1242(a), (b). "No later than the 120th day after" the commission receives a response from the respondent, the commission must either "propose an agreement to the respondent to settle the complaint without holding a preliminary hearing," or dismiss the complaint. § 571.1242(g)(1)(2). If the respondent rejects the proposed settlement, the matter is then set for a preliminary hearing. §§ 571.1242(i), 571.125. After the preliminary hearing, the commission takes a vote to determine whether sufficient evidence establishes that a violation has occurred and, if so, whether the violation is "technical or *de minimis*." § 571.126(a)(1). If the commission determines that evidence of a violation does exist, the commission "shall resolve and settle the complaint or motion to the extent possible." § 571.126(b). If settlement is unsuccessful, the commission "shall" order a formal hearing. § 571.126(b)(1). The purpose of the formal hearing is to "determine by a preponderance of the evidence whether a violation within the jurisdiction of the commission has occurred." §

§§ 571.124(a) through 571.132. If the matter proceeds to a formal hearing, the TEC must issue a final decision with a "written report stating in detail the commission's findings of fact, conclusions of law, and recommendation of criminal referral or imposition of a civil penalty, if any." § 571.132(a)(1)–(2). The decision that a violation has occurred must be approved by at least six of the eight commission members. § 571.132(b). The respondent then has 30 days to appeal the final decision to a district court. § 571.133.

As mentioned above, most of the statutes that the TEC is required to administer and enforce have possible criminal penalties. Therefore, the Legislature has provided that the TEC may refer matters for criminal prosecution, but *only* upon an affirmative vote of at least six of the eight commission members. § 571.171(a). Section 571.171 provides: "On a motion adopted by an affirmative vote of at least six commission members, the commission may initiate civil enforcement actions and *refer matters to the appropriate prosecuting attorney for criminal prosecution.*" *Id.* (emphasis added).[11, 12]  As further indication that the TEC has exclusive jurisdiction over these criminal statutes, the Legislature requires that the TEC delay any referrals for prosecution until after an impending election has

---

571.129. During the formal hearing, both the commission and the respondent may subpoena witnesses and present evidence. § 571.130.

[11] Upon receipt of a complaint, the executive director of the commission may refer a matter for criminal prosecution if he reasonably believes the respondent violated any provision of Penal Code Chapter 36 (Bribery and Corrupt Influence) or Chapter 39 (Abuse of Office). TEX. GOV'T CODE § 571.171(b). Appellant is not charged with violating any provisions of the Penal Code and is instead alleged to have violated only provisions of the Government Code, Local Government Code, and Election Code. So this provision allowing for immediate referral in some situations does not apply here.

[12] Chapter 571 also provides for the commission's authority to issue orders and impose civil penalties. *See* TEX. GOV'T CODE § 571.172 (permitting the commission to issue orders requiring compliance and to impose monetary penalties for non-compliance).

occurred so that the referral does not interfere with the election. *See id.* § 571.134 (providing that if a violation pertains to an election in which the alleged violator is a candidate or campaign treasurer and the complaint was filed within 60 days of the election, "the commission shall delay referral" until the day after election day).

Chapter 571 further provides that some of the TEC's mandatory enforcement duties are non-delegable. Section 571.075 provides for when the TEC "may delegate a power conferred" to it, and states that the TEC is explicitly prohibited from delegating "any power requiring a vote of the commission." *Id.* § 571.075; *see also* § 571.076 ("The commission may contract with persons to administer and carry out this chapter and rules, standards, and orders adopted under this chapter, *excluding any enforcement authority.*") (emphasis added). These non-delegable duties include both the TEC's power to find that there has been a violation of a law or rule within the jurisdiction of the TEC, and the TEC's power to refer a matter for criminal prosecution, as both powers require "an affirmative vote of at least six commission members." *Id.* §§ 571.061(a); 571.171(a).

Taken together, the creation of the TEC under the Texas Constitution, coupled with the extensive statutory scheme put in place by the Legislature, and the narrow and specific subject matter for which the TEC is responsible demonstrate that the Legislature intended the TEC to have exclusive jurisdiction over Appellant's alleged violations. The foregoing discussion demonstrates that Government Code Chapter 571 is a "pervasive regulatory scheme" that reflects the Legislature's intent for the TEC to have *exclusive* authority to make an initial determination of whether a law violation has occurred in this context. *See David McDavid Nissan*, 84 S.W.3d at 221. Further, even accepting that the statutes are not

explicit in providing that the TEC has exclusive jurisdiction, the procedures set forth in Chapter 571 afford additional rights and protections not available in the common law to public office candidates and elected officials—for example, the opportunity to obtain an agreed resolution through the informal preliminary review process and hearing, the right to maintain the confidentiality of the proceedings before a violation has been determined, the right to a vote of the commission as to whether the respondent should be referred for criminal prosecutions, and the mandate that any referral for criminal prosecution cannot interfere with an impending election and must be delayed until after the election. These rights and protections are available only through the review and enforcement mechanisms afforded by TEC administrative proceedings—not in a court of law pursuant to a criminal prosecution. These procedures and protections would be wholly undermined if a prosecutor could simply bypass them by bringing criminal charges for the alleged offenses in his or her own discretion. Moreover, the statutory scheme reflects that access to the district court is intended only after the TEC makes its final decision—either through an appeal, or upon a TEC referral for criminal prosecution. TEX. GOV'T CODE §§ 571.133 (providing that the respondent has 30 days to appeal the final decision of the TEC to a district court); 571.171(a) (providing for referral for criminal prosecution to the "appropriate prosecuting attorney" upon vote of six of eight commissioners).

In addition to this "pervasive regulatory scheme" demonstrating that the Legislature intended the TEC to have exclusive jurisdiction, the TEC is "staffed with experts trained in handling the complex problems in the agency's purview." *David McDavid Nissan*, 84 S.W.3d at 221. "[G]reat benefit is derived from [the TEC] uniformly interpreting its laws,

rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *Id.* For example, Tex. Gov't. Code § 302.021 is within the TEC's purview. It lists criminal offenses and penalties that may only be committed by a current or former speaker of the house candidate. These offenses mainly involve failing to file with the TEC a specific type of declaration, statement, or report, accepting or retaining certain types of prohibited contributions, and expending contributions for a prohibited purpose. The failure-to-file offenses all involve documents that are promulgated by the TEC and must be filed with and reviewed by the TEC. The offenses related to the contributions and expenditures involve financial matters that must be reported on forms promulgated by the TEC, governed by rules promulgated by the TEC, and must be listed on reports that are submitted to, reviewed by, and maintained by the TEC. The TEC has the specific expertise to best identify if there has been a violation of its own rules, procedures, reporting requirements, etc. And it has the expertise to determine if a violation rises to the level of a criminal offense such that referral to a prosecutor is warranted. Such a referral would then trigger the jurisdiction of the trial court. Because the Legislature bestowed a narrow expertise on the TEC and provided that agency with the structure, resources, and funding to enforce the laws within its purview, this circumstance also demonstrates the Legislature's intent that the TEC must make the initial investigation, review, and decision involving the matters it is designed to address—including matters that may later be referred for criminal prosecution.

Accordingly, based on our examination of the applicable constitutional and statutory provisions, we conclude that the TEC has exclusive jurisdiction to make an initial

determination with respect to Appellant's alleged violation of campaign laws, and the district court has no subject matter jurisdiction over these allegations unless and until the TEC makes a final determination and votes to refer them for criminal prosecution. Until the district court has subject matter jurisdiction, the special prosecutor may take no action. Appellant is entitled to relief on the merits.

### C. The State's arguments to the contrary are unavailing.

In seeking to uphold the denial of pretrial habeas relief here, the State focuses its arguments on a district attorney's constitutional authority to enforce the law. *See* TEX. CONST., Art. V, § 21. It suggests that no provision in Chapter 571 expressly deprives the special prosecutor of his authority or discretion to initiate a prosecution for these offenses. But as addressed above, the issue here is actually the trial court's lack of subject matter jurisdiction, not whether the special prosecutor has authority to pursue criminal charges. Even so, it is worth noting that nothing in the TEC's enforcement scheme conflicts with the district and county attorney's constitutional duty to represent the State in all cases *in the district and inferior courts*. *See id.* If a case cannot be filed in the trial courts based on a lack of subject matter jurisdiction, then necessarily, the district and county attorneys cannot represent the State in the trial courts for such matters. In this sense, the requirement of exhaustion of TEC administrative remedies is not unlike the requirement of an order transferring a juvenile to adult criminal court before criminal proceedings may occur. *See* TEX. FAMILY CODE § 54.02 (providing that a "juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings" if the Family Court determines that certain statutory

requirements are met). Both are jurisdictional prerequisites to the commencement of criminal proceedings in the district court. Nothing about the Legislature's enactment of such prerequisites infringes upon a prosecutor's duty to represent the State in criminal "cases" that may properly be brought in the courts. *See State v. Stephens*, 663 S.W.3d 45, 50 (Tex. Crim. App. 2021) (stating, with respect to the duties of district and county attorneys, "our courts have long recognized that, along with various civil duties, their primary function is to prosecute the pleas of the state in criminal cases.") (citation and quotation omitted).

In addition, the State raises a "slippery slope" argument. It contends that, if we recognize the TEC as having exclusive authority to make an initial determination as to whether a law violation has occurred in this context, then countless other state agencies with civil enforcement authority will also necessarily have exclusive jurisdiction over potential criminal offenses. This, the State suggests, would undermine prosecutorial discretion and impede a prosecutor's ability to enforce the law. Without engaging in an exhaustive analysis of every administrative agency's enforcement scheme at this juncture, we simply note that, as shown above, whether a particular administrative agency has exclusive jurisdiction over a matter is purely a product of statutory interpretation. A finding that an administrative agency has exclusive jurisdiction over an alleged law violation would occur only if the statutes signaled clear legislative intent in that regard. *See Long*, 207 S.W.3d at 340. Moreover, the statutory scheme of most other administrative agencies does not involve specific criminal offenses that are found only within the purview of such agencies. Here, the Legislature enacted criminal offenses pertaining only to elections,

campaigns for public office, and duties of elected officials. The Legislature then placed those offenses within the statutes for which the TEC has mandatory administration and enforcement authority Thus, the extensive regulatory scheme in Government Code Chapter 571 evinces legislative intent to bestow exclusive authority upon the TEC to make initial determinations as to whether political candidates have violated the election laws. Therefore, the State's argument that our holding on this matter will carry far-reaching implications for other offenses that fall under the oversight of administrative agencies is meritless. Exceptions to a district court's jurisdiction are left to the Legislature and can only be determined by the courts on a case-by-case basis by examining the applicable statutes.

> **D.      The dissent's position tracks that of the State and is also unavailing.**

Like the State, the dissent's position mistakenly focuses on prosecutorial power. But, as demonstrated above, the issue in this case has nothing to do with prosecutorial power, and instead concerns the trial court's lack of subject matter jurisdiction. Despite Chapter 571's lack of "magic words," the Legislature has made it clear through its "pervasive statutory scheme," that the trial court has no jurisdiction over matters falling within the TEC's purview unless and until all administrative remedies have been exercised. Thus, until the TEC has issued an "initial determination," which may or may not include a referral for prosecution, nothing may be filed in the trial court.

The dissent seems to suggest that because the matters presented here are criminal prosecutions, the exclusive jurisdiction doctrine could not apply. But the Texas

Constitution does not provide such an exemption. It allows the Legislature to confer a trial court's jurisdiction on "some other court, tribunal, or administrative body." TEX. CONST. ART. V, § 8. There is no distinction between civil or criminal jurisdiction. The constitutional duty of the district and county attorneys is to represent the State in both criminal and civil matters *in the trial courts*. *Id.* ART. V, § 21. Therefore, pursuant to Article V, Section 8, the Legislature has the ability to give exclusive jurisdiction over civil and/or criminal matters to a state agency, thereby requiring exhaustion of administrative remedies before the trial court can obtain jurisdiction.

Just because the Legislature "knows how to explicitly vest exclusive jurisdiction in a non-criminal decision-maker before allowing a criminal prosecution" and did so for juvenile cases, that does not mean that the Legislature's failure to use the "magic words" of "exclusive original jurisdiction" in the TEC statutes changes the fact that the "pervasive statutory scheme" evinces legislative intent for exclusive jurisdiction in the TEC.

There is Texas Supreme Court precedent going back to at least 1990 mandating that the Legislature need not include such "magic words" in an agency's statutory scheme to support a finding of exclusive jurisdiction. *See Long*, 207 S.W.3d at 340. At the time that the TEC was constitutionally created and its statutes were enacted in 1991, the Legislature was on notice that the creation of a "pervasive statutory scheme" for a state agency would be construed by the courts to invoke exclusive jurisdiction in that agency and would require the exhaustion of administrative remedies before vesting the trial court with subject matter jurisdiction. Moreover, as the Texas Supreme Court declared additional agencies as having

exclusive jurisdiction despite no "magic words" being used, the Legislature had opportunities to amend the statutes if it disagreed with such an interpretation, yet it did not.

This opinion already identified the Harris County Sheriff's Department Civil Service Commission as an agency with exclusive jurisdiction despite the lack of "magic words" in the statutes pertaining to this agency. Additional examples include local tax appraisal districts and the Employee Retirement System of Texas.

The Texas Supreme Court has long declared that local tax appraisal districts possess exclusive original jurisdiction despite the lack of "magic words" in the Tax Code. *See, e.g. Webb Cnty. Appraisal District v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954-55 (Tex. 1990) (requiring the exhaustion of administrative remedies before the trial court was vested with subject matter jurisdiction); *see also Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1992) (*per curiam*); *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501 (Tex. 2006) (*per curiam*). In *Rourk*, the Texas Supreme Court noted that the "Texas Tax Code provides detailed administrative procedures for those who would contest their property taxes;" "Administrative decisions are final if not appealed to the district court within 45 days;" and "administrative procedures are 'exclusive' and most defenses are barred if not raised therein." *Rourk,* 194 S.W.3d at 502. Thus, although the relevant statute did not use the "magic words" of "exclusive jurisdiction," the pervasive regulatory scheme that the statute created indicated that the Legislature intended to vest local tax appraisal districts with exclusive original jurisdiction. *Id.*

ERS is another administrative agency that the Texas Supreme Court has declared possesses exclusive original jurisdiction despite the relevant statutes omitting the "magic words" of "exclusive jurisdiction." *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 676 (Tex. 2006) (*per curiam*). In *Duenez*, the Texas Supreme Court held that ERS had exclusive original jurisdiction because the organic statute created a "pervasive regulatory scheme" that indicated the Legislature intended for the parties to exhaust the administrative remedies with ERS before suing in district court. *Id.* Thus, the district court lacked jurisdiction until the parties pursued remedies from the executive director of ERS, and, if necessary, appeals to the Board of Trustees of ERS. *Id.*

The foregoing examples demonstrate that the Legislature has previously bestowed exclusive jurisdiction on administrative agencies without using the magic words "exclusive jurisdiction" on at least a few occasions. Just because the statutes that the TEC is tasked with enforcing contain criminal penalties does not strip the TEC of its exclusive jurisdiction. The dissent fails to defer to the clear legislative intent.

## III. Conclusion

For the foregoing reasons, we reverse the court of appeals' decision upholding the trial court's denial of pretrial habeas relief. Because the TEC has exclusive jurisdiction to make an initial determination with respect to Appellant's alleged violations of election and campaign laws, the absence of prior administrative proceedings in the TEC results in the district court being deprived of jurisdiction over these offenses. The remedy for such a jurisdictional defect is dismissal of the indictments. It is so ordered.

Delivered: September 11, 2024

Publish